UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

```
------------------------------------------------------------X
JANE DOE,                                    :
                                             :
                    Plaintiff,               :        C.A. No. 1:15-cv-239-M-PAS
                                             :
        -against-                            :
                                             :
BROWN UNIVERSITY IN PROVIDENCE IN            :
THE STATE OF RHODE ISLAND AND                :
PROVIDENCE PLANTATIONS, MELISSA              :
CLARK, individually and as agent of Brown    :
University, MARGARET KLAWUNN,                 :
Individually and as agent of Brown University,:
and CHRISTOPHER DENNIS, individually         :
and as agent of Brown University,            :
                                             :
                    Defendants.              :
------------------------------------------------------------X
```

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT
OF HER OBJECTION TO DEFENDANTS' MOTION TO DISMISS


NESENOFF & MILTENBERG, LLP
Attorneys for Plaintiff
363 Seventh Avenue, Fifth Floor
New York, New York 10001
(212) 736-4500


-and-


Samuel D. Zurier, Esq. (#3576)
Local Counsel for Plaintiff
55 Dorrance Street, Suite 400
Providence, Rhode Island 02903
(401) 861-0200

## TABLE OF CONTENTS

TABLE OF AUTHORITIES…………………………………………………………..…....iii

PRELIMINARY STATEMENT………………………………………………………………1

STATEMENT OF FACTS AS ALLEGED IN THE COMPLAINT…………..………………2

    I.      The "Take-Home" Examination……………………………….………2

    II.     Brown's Code of Student Conduct…………………………………………..3

    III.    The investigation and adjudication……………………………………………..5

    IV.    Brown's limited investigation……………………………………………….....8

    V.     The Hearing's procedural deficiencies………………………….………....10

    VI.    The Appeal……………………………………………………………………11

ARGUMENT…………………………………………………………………………………14

    I.      THE LEGAL STANDARD GOVERNING MOTIONS TO DISMISS………....14

    II.     THE COMPLAINT STATES A CLAIM FOR BREACH OF CONTRACT…...16

        1.     The Controlling Standard…………………………………………………16

        2.     Brown's denial of Plaintiff's due process rights set forth in the Code support a cause of action for breach of contract………………….19

          a.   Waiver is not a defense…........................................................................20

          b.   The degree of prejudice affects the extent of damages, but not the existence of an actionable breach of contract……………………..……23

          c.   Specific Due Process Violations Claimed……..……………………….25

             i.   The Right to Examine Adverse Witnesses…………………….…...25

             ii.   The Right to Review Charges and Dispute Evidence……………….26

             iii.  The Right to be Notified of the Exact Charges……………………...28

             iv.  The right to consult with a Brown Faculty or Administrative Advisor...................................................................29

        d.   Additional contractual violations…………………………………….…30

    III.    THE COMPLAINT STATES A CAUSE OF ACTION FOR BREACH
            OF THE COVENANT OF GOOD FAITH AND FAIR DEALING………...…..31

    IV.     THE COMPLAINT STATES A CAUSE OF ACTION FOR
            PROMISSORY ESTOPPEL…………………………………………………...…33

    V.      THE COMPLAINT STATES A CAUSE OF ACTION FOR
            NEGLIGENCE……………………………………………………………...……35

    VI.     THE COMPLAINT STATES A CAUSE OF ACTION FOR NEGLIGENT
            AND/OR INTENTIONAL MISREPRESENTATION…………………………38

    VII.    THE COMPLAINT STATES A CAUSE OF ACTION FOR
            UNREASONABLE PUBLICITY TO ONE'S PRIVATE LIFE……………..…40

    VIII.   PLAINTIFF WITHDRAWS HER CLAIM FOR NEGLIGENT INFLICTION
            OF EMOTIONAL DISTRESS………………………………………………..…43

    IX.     THE COMPLAINT STATES A CAUSE OF ACTION FOR INTENTIONAL
            INFLICTION OF EMOTIONAL DISTRESS………………..………………..…43

    X.      THE COMPLAINT STATES A CAUSE OF ACTION FOR TORTIOUS
            INTERFERENCE WITH CONTRACT…………………………………...…..46

    XI.     BECAUSE DEFENDANTS MOVED FOR SUMMARY JUDGMENT
            WITHOUT FIRST ALLOWING DISCOVERY, THE COURT SHOULD
            DENY BROWN'S RULE 12 MOTION AS MOOT AND DENY
            DEFENDANTS' SUMMARY JUDGMENT AS PREMATURE………………49

    XII.    ALTERNATIVELY, LEAVE TO AMEND IS WARRANTED…………..……50

CONCLUSION……………………………………………………………………...……51

## <u>TABLE OF AUTHORITIES</u>

**Cases:**

A.G. ex rel. Maddox v. v. Elsevier, Inc.,
    732 F.3d 77 (1st Cir. 2013)………………..…………………………………………..….……14

Armstrong Pharm., Inc. v. Micron Technologies, Inc.
    No. CIV.A 09-11197-RWZ, 2010 WL 745057 (D. Mass. 2010)………………….....15, 30

Atl. Paper Box Co. v. Whitman's Chocolates,
    844 F. Supp. 1038 (E.D. Pa. 1994)………………………..…………………………………..33

Andrade v. Jamestown Housing Auth.,
    82 F.3d 1179 (1st Cir. 1996)……………………..…………………………………………43

Arista Records, LLC v. Doe
    604 F.3d 110 (2nd Cir. 2010) …………………………………………...…….……..…..…41

Ashcroft v. Iqbal,
    556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009)…………………………...*passim*

Atria v. Vanderbilt University,
    142 Fed. Appx. 246 (6th Cir. 2005)……………………………………………………....17

Beauchene v. Mississippi Coll.,
    986 F. Supp. 2d 755 (S.D. Miss. 2013)…………………………….……………………17

Bell Atl. Corp. v. Twombly,
    550 U.S. 544, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007)…………..……………………..*passim*

Boehm v. Univ. of Pennsylvania Sch. of Veterinary Med.,
    392 Pa. Super. 502, 573 A.2d 575 (1990)……………………..………...…………….17

Boykin v. KeyCorp,
    521 F.3d 202 (2nd Cir.2008)………………………………………………....…….……41

Bradbury v. Network Enterprises, Inc.,
    2013 WL 587884 (E.D. Mo. Feb. 13, 2013)………………………..……………………46

Braden v. Wal–Mart Stores, Inc.,
    588 F.3d 585 (8th Cir. 2009)…………………………………………………………..……15

Brody v. Finch University of Health Sciences/The Chicago Medical School,
    298 Ill. App. 3d 146, 232 Ill. Dec. 419, 698 N.E. 2d 257 (2nd Dist.),
    *app. denied,* 179 Ill. 2d 578, 705 N.E. 2d 434 (1998)……..……………………….....18

Century Metal Recycling Private Ltd. v. Metal Worldwide, Inc.,
        2013 WL 4851696 (D.Md. Sept. 10, 2013)………………………....……...…..41

Ciolino v. Eastman,
        No. 13-CV-13300-ADB, 2015 WL 5163046 (D. Mass. Sept. 3, 2015)…………….....44

City of Warwick v. Laborers' Int'l Union of N. Am.,
        No. CIV.A. 08-366ML, 2009 WL 462690 (D.R.I. Feb. 23, 2009)……………………....50

Clogher v. New York Medical College,
        112 A.D.3d 574, 976 N.Y.S.2d 198 (App. Div. 2013)………………………………..18

Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co.,
        228 F.3d 24 (1st Cir. 2000)…………….…………………………………………...49

Connelly v. Univ. of Vt. & State Agr. Coll.,
        244 F. Supp. 156 (D. Vt. 1965)……………………………………………....…...16

Cordell v. Howard
        879 F.Supp. 2d 145 (D.Mass. 2012)………………………………………………..50

Corso v. Creighton University
        731 F.2d 529 (8th Cir. 1984)………………………………………………………27

Davis v. New England Pest Control Co.
        576 A.2d 1240 (R.I. 1990)………..………………………………………...…27

DeJean v. FedEx Ground Package Sys Inc.
        No. CV 13-06194 BRO EX, 2013 WL 5798548 (C.D. Cal. Oct. 25, 2013)…………….43

Dillard's Dept. Stores, Inc. v. Strom,
        869 S.W.2d 654 (Tex. Ct. App. 1994)……………………………………………...39

Doe v. Bd. of Educ. of Prince George's Cnty.,
        888 F. Supp. 2d 659 (D. Md. 2012)……………………………………………...35

Doe v. Salisbury Univ.,
        No. CIV. JKB-15-517, 2015 WL 500581 (D. Md. Aug. 21, 2015)……………….…42

Doe v. Univ. of the South,
        2011 WL 1258104 (E.D. Tenn. 2011)……………………………………………...35

Filippi v. Filippi,
        818 A.2d 608 (R.I. 2003)…………………………….………………………34

Fleet v. Bank of Am. N.A.,
        229 Cal. App. 4th 1403, 178 Cal. Rptr. 3d 18 (2014)…………………………………33

Fussell v. Louisiana Business College of Monroe, Inc.,
        478 So.2d 652 (La. Ct. App. 2nd Cir. 1985)………………………………………..…18

Gaston v. Terronez,
        No. 1:08-CV-01629-SKO, 2010 WL 2991180 (E.D. Cal. July 28, 2010)…………......…30

Gorman v. St. Raphael Academy,
        853 A.2d 28 (R.I. 2004)……………………………………………...………………..20

Graham v. Mukasey,
        519 F.3d 546 (6th Cir. 2008)……………………………………………..………….24

Hasbro, Inc. v. Mikohn Gaming Corp.,
        No. CIV.A. 05-106 S, 2006 WL 2035501 (D.R.I. July 18, 2006)………………………33

Hennessey v. Pyne,
        694 A.2d 691 (R.I. 1997)…………………………………………………………...35

Holt Civic Club v. City of Tuscaloosa,
        439 U.S. 60, 99 S.Ct. 383, 58 L.Ed. 2d 292 (1978)……………………..……………38

Hudson v. Dr. Michael J. O'Connell's Pain Care Ctr., Inc,.
        822 F. Supp. 2d 84 (D.N.H. 2011)……………………..…………………………..…15

In re Apple In-App Purchase Litig.,
        855 F. Supp. 2d 1030 (N.D. Cal. 2012)……………………..……………………...…21

Jahn v. Farnsworth,
        33 F. Supp. 3d 866 (E.D. Mich. 2014), aff'd, 2015 WL 3938035 (6th Cir.)……………24

Jolicoeur Furniture Co. v. Baldelli,
        653 A.2d 740 (R.I. 1995)……………………………………………...……....46

Kane v. American National Bank & Trust Co.,
        21 Ill.App.3d 1046, 316 N.E.2d 177 (1974)…………………………………………22

Kent v. Halliday,
        23 R.I. 182, 49 A. 700 (1901)……..………..,…...…………………………………23

Kilduff v. Adams, Inc.,
        219 Conn. 314, 593 A.2d 478 (1991)………………………………..…………………39

Lamarque v. Centreville Sav. Bank,
    22 A.3d 1136 (R.I. 2011)………………….,.…...………………………………….40

LaRoche v. State,
    No. C.A. WM 97-0088, 1997 WL 1526515 (R.I. Super. May 21, 1997)…………..……50

Lifespan Physicians Professional Services Org., Inc. v. Combined Insurance Co. of America,
    345 F.Supp.2d 214 (D.R.I. 2004)………………….………………………....…..31, 38

Lisnoff v. Stein,
    925 F. Supp. 2d 233 (D.R.I. 2013).………………………………………………..40, 43

Liu v. Northwestern University,
    78 F. Supp. 3d 839 (N.D.Ill. 2015)……………….….………………….…...……….18

Liu v. Striuli,
    36 F. Supp. 2d 452 (D.R.I. 1999)………………………………………………....35

Local 850, Int'l Ass'n of Firefighters, AFL-CIO v. Pakey,
    107 R.I. 124, 265 A.2d 730 (1970)…………………………………………………50

Lorenz v. Dreske,
    62 Wis. 2d 273, 214 N.W.2d 753 (1974)……………………….……..….……………47

Mangla v. Brown Univ.,
    135 F.3d 80 (1st Cir. 1998)……………………..……………………………19, 20, 31

Matter of Sofair v. State Univ. of N. Y. Upstate Med. Center Coll. of Medicine,
    54 A.D.2d 287, 388 N.Y.S.2d 453 (4th Dept. 1976)………………………….…………36

Michalopoulos v. C&D Restaurant,
    764 A.2d 121 (R.I. 2001)……………………………………………………….……..37

Mills v. State Sales, Inc.,
    824 A.2d 461 (R.I. 2003)……………………………………………………..35

Miranda v. Arizona,
    384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed. 2d 694 (1966)………...……………………..21

Morales v. Chadbourne,
    996 F. Supp. 2d 19 (D.R.I. 2014)………………….…...……………….…………13, 45

Morales v. New York Univ.,
    83 A.D.2d 811, 442 N.Y.S.2d 12, *aff'd*, 55 N.Y.2d 822, 432 N.E.2d 140 (1981)…….16

Morehouse College v. McGaha ,
    277 Ga. App. 529, 627 S.E. 2d 39, *cert. denied* 2006 Ga. LEXIS 434...……………..18

New England Multi-Unit Hous. Laundry Ass'n v. Rhode Island Hous. & Mortgage Fin. Corp.,
    893 F. Supp. 1180 (D.R.I. 1995)……………………..…………………………….…46

Normandin v. Gauthier,
    No. C.A. 03-6211, 2006 WL 1073422 (R.I. Super. 2006)………………………….……32

Oates v. Union Railway Co.,
    27 R.I. 499, 63 A. 675 (1906)………………………………………………..……..37

Ocasio–Hernandez v. Fortuno–Burset
    640 F.3d 1 (1st Cir.2011)…………………………………….…………………….14, 15

Olsson v. Bd. of Higher Educ.,
    49 N.Y.2d 408, 426 N.Y.S.2d 248, 402 N.E.2d 1150 (N.Y. 1980). …………..........……16

O'Neil v. Q.L.C.R.I., Inc.,
    750 F. Supp. 551 (D.R.I. 1990)……………………………………………….……50

Paulin v. George Washington University School of Medicine,
    878 F.Supp. 2d 241 (D.D.C. 2012)…………………………………..…….………17

Pontbriand v. Sundlun,
    699 A.2d 856 (R.I. 1997)……….…………………………………………………40

Reilly v. Cox Enterprises, Inc.,
    2014 WL 4473772 (D.R.I. 2014)……………………….…………..………………41

Robertson Stephens, Inc. v. Chubb Corp.,
    473 F.Supp.2d 265, 275–76 (D.R.I.2007)…………………………………...……..47

Rodriguez–Reyes v. Molina–Rodriguez,
    711 F.3d 49 (1st Cir.2013)………………………….………………………………14

Ross–Simons of Warwick, Inc. v. Baccarat, Inc.,
    66 F.Supp.2d 317 (D.R.I.1999), *aff'd*, 217 F.3d 8 (1st Cir.2000)…………………….……32

Rossi v. Ronci,
    63 R.I. 250, 7 A.2d 773 (1939)……………………………………………….……37

Roy v. Woonsocket Inst. for Savings,
    525 A.2d 915 (R.I.1987)………………………………………………....…………....47

Ryder v. Bank of Hickory Hills,
    146 Ill.2d 98, 165 Ill.Dec. 650, 585 N.E.2d 46 (1991)……………..……………….22

S.K. v. Anoka-Hennepin Indep. Sch. Dist. No. 11,
    399 F. Supp. 2d 963 (D. Minn. 2005)…………………….………………………..24

Sepulveda–Villarini v. Dept. of Educ. of P.R.,
    628 F.3d 25 (1st Cir.2010)…………………………………………...……………15, 44

Sharick v. Southeastern University of the Health Sciences, Inc.,
    780 So. 2d 136 (Fl. Dist. Ct. App. 3d Dist. 2000)………………………………….18

Shoemaker v. City of Howell,
    793 F. 3d 553 (6th Cir. 2015)…………………...……………………………………..24

Simonian v. Blistex, Inc.,
    2010 WL 4539450 (N.D.Ill. Nov. 3, 2010)…………….…………………………..41

Slay v. Bank of Am. Corp.,
    No. CA 10-408 ML, 2011 WL 1045629 (D.R.I. Mar. 9, 2011)…………………..……..44

Stephen Jay Photography, Ltd. v. Olan Mills, Inc.,
    903 F.2d 988, 993 (4th Cir.1990)…..……………………………………………….36

Sturbridge Home Builders Inc. v. Downing Seaport, Inc.,
    890 A.2d 58 (R.I. 2005)…………………………...……………………………….22

Styczinski v. Westminster Mint, Inc.,
    2014 WL 6388738 (D. Minn. Nov. 14, 2014)………………..……………………38

Sullo v. Greenberg,
    68 A.3d 404 (R.I. 2013)…………………………………………………………….35

Swerdlick v. Koch,
    721 A.2d849 (R.I. 1998)……………………………………………………………40

T.G. Plastics Trading Co. Inc. v. Toray Plastics (America), Inc.,
    958 F.Supp.2d 315 (D.R.I. 2013)……………………………………………….....31

Tedeschi v. Wagner College,
    49 N.Y.2d 652, 427 N.Y.S.2d 760, 404 N.E.2d 1302 (1980)………....……………..…17

Volpe v. Gallagher,
    821 A.2d 699 (R.I. 2003)……………………………………………………………...35

W. Mass. Blasting Corp. v. Metro. & Cas. Ins. Co.,
    783 A.2d 398 (R.I. 2001)………………………………………………………………...47

Watson ex rel. Watson v. Beckel,
    242 F.3d 1237 (10th Cir. 2001)………………….…………………………………....24

Weyerhaeuser Co. v. Domtar Corp.,
    61 F. Supp. 3d 445 (D. Del. 2014)……………………………………...…………..38

Wilby v. Savoie,
    86 A.3d 362 (R.I. 2014)………………………………………………………….………38

Willis v. Omar,
    954 A.2d 126 (R.I. 2008)……………………………………………………..………….35

Wyso v. Full Moon Tide, LLC,
    78 A.3d 747 (R.I. 2013)……………………………………………………………………35

**Statutes & Rules:**

Federal Rule of Civil Procedure 8(a)(2)……………………………………………….......45

Federal Rule of Civil Procedure 11(b)…………………………………….…………………41

Federal Rule of Civil Procedure 12(b)(6)……………………………..…………………*passim*

Federal Rule of Civil Procedure 12(d) …………………………………………….………49

Federal Rule of Civil Procedure 56(d) …………………………………………….………50

R.I. Gen. Laws § 9–1–28.1(a)(3)…………………………………………..………………43

**Treatises**

Prosser and Keeton on the Law of Torts § 129 at 978 (5th ed. 1984)…………………………46

Restatement (Second) of Torts § 46 comment a (1965)…………………………………………44

Restatement (Second) of Torts § 302 comment a (1965)……………………………………...36

Wright, Charles A., Federal Practice and Procedure § 1224 (3d ed.)……………………………41

## PRELIMINARY STATEMENT

Plaintiff Jane Doe ("Plaintiff") respectfully submits this Memorandum of Law in opposition to defendants Brown University ("Brown" or the "University"), Melissa Clark ("Defendant Clark"), Margaret Klawunn ("Defendant Klawunn") and Christopher Dennis ("Defendant Dennis") (collectively, "Defendants") Memorandum of Law in Support of Rule 12(b)(6) Motion to Dismiss ("Motion to Dismiss") Plaintiff's Complaint ("Complaint") for failure to state a claim upon which relief may be granted. Defendants' Motion to Dismiss should be denied in its entirety. Plaintiff states *prima facie* claims for relief under state law, including breach of contract and negligence, which resulted in an erroneous outcome from a flawed proceeding and a severe and unjust penalty imposed on Plaintiff. Given what is actually alleged, this case easily passes muster under the pleading standards defined in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009).

In its Motion to Dismiss, Defendants fail to adhere to the required standards for dismissal under Federal Rule of Civil Procedure 12(b)(6). A Court is to consider a motion to dismiss in terms of the plaintiff's actual pleadings in the complaint, and not in terms of a defendant's selective characterization of the facts. Brown rationalizes its finding of responsibility and failure to afford Plaintiff the requisite procedural rights on the grounds that Plaintiff acknowledged collaborating on the exam. Defendant Brown ignores the fact that Plaintiff has at all times stated very clearly that she collaborated on the Exam because it was understood by all students that collaboration was allowed. This was a point that Plaintiff was entitled to argue, but was lost when Brown failed to abide by its stated policies and procedures and ensure that Plaintiff was afforded the rights contractually guaranteed to her by Brown's Academic Code. Consequently,

1

the merits of the underlying disciplinary decision are irrelevant. Defendants acted arbitrarily and capriciously when they denied Plaintiff the fundamental fairness and minimum level of due process set forth in Brown's Academic Code. Thus, judicial review of Defendants' egregious misconduct is required.

Plaintiff has been greatly damaged by Brown's arbitrary and capricious actions: Plaintiff's educational and academic experience was derailed by severing her from her teammates, friends and social network during what should have been her final semester in college; her reputation tarnished; her career prospects severely damaged; and the monies spent on obtaining a college education at Brown University squandered.

As described in the Complaint, Brown materially breached the guarantees of fair process and fundamental fairness and other contractual provisions, and defied all reasonable expectations that Plaintiff relied upon when accepting admission to Brown. Through its actions and omissions during the disciplinary process, Brown breached a duty of care to Plaintiff that is separate from any duty owed under the parties' contracts, making it also liable for negligence. For the reasons outlined below, Plaintiff is entitled to compensatory damages and injunctive relief with respect to her education records which are now tarnished and which continue to cause ongoing damage to Plaintiff's future.

**STATEMENT OF FACTS AS ALLEGED IN THE COMPLAINT**

**I.       The "Take-Home" Examination.**

In the fall semester of 2013, Plaintiff enrolled in Introduction to Public Health ("Public Health 320"). (Cmplt. ¶ 39.) The course was taught by Defendant Clark and had an enrollment of approximately 200 students. *Id.* It was well known among Brown's student population that Defendant Clark's teaching methodology encouraged student collaboration and group work on

assignments. The loose structure of Defendant Clark's course resulted in Public Health 320 becoming known at Brown as an "easy A" course. (Cmplt. ¶ 40.)

In or around November 2013, Defendant Clark assigned a midterm examination (the "Exam"), which she posted online without any written instructions. (Cmplt. ¶ 41.) Defendant Clark did not indicate that student collaboration on the Exam was forbidden on either the course syllabus or on the Exam itself. (Cmplt. ¶ 41.) Given Defendant Clark's general methodology and approach to the course throughout the semester, the majority of the 200 students in Public Health 320 paired up in groups to collaborate on the Exam and bounce ideas off each other. (Cmplt. ¶ 48.) Accordingly, Plaintiff worked with five to seven other students, including T.L., and came up with a common "intervention pathway" in response to the scenario posed in Exam question number four. (Cmplt. ¶ 49.)

## II.   **Brown's Code of Student Conduct**

Brown University sets academic standards for its students in its Code of Student Conduct which also contains enforcement provisions and procedural safeguards that applied to Plaintiff's case. *See* Cmplt., ¶ 28 & Exhibit A to Complaint (hereinafter referred to as "Code"). Among other things, the Code prohibits students from "[e]ngaging in collaboration or unauthorized assistance on take-home examinations or assignments." Code, p. 7. While Defendants present this as a steadfast requirement, certainly, Brown professors have discretion to design a curriculum and conduct their own courses by whatever methods they deem appropriate, which may include permitting and/or encouraging group work and collaboration. Brown's Code acknowledges that "[i]n some instances an instructor or department may authorize students to work jointly in solving problems or completing projects...." *See* Code, p. 5. Thus, contrary to

Defendants' suggestion, Brown's Code cannot be interpreted to categorically prohibit collaboration in all contexts.

When a teacher suspects a student of a Code violation, the teacher refers the matter to a Case Administrator.  *See* Code, p. 8.  In the case of suspected plagiarism on an examination, the referring teacher must submit a package to the Case Administrator containing the following:

- hard copies of the work in question;

- a narrative of the alleged violation;

- copies of the examinations, a statement of the specific areas of plagiarism, and the referrer's process for discovering of the alleged misconduct.

*See* Code, pp. 8-9.

After reviewing the package with the referring faculty member, the Case Administrator decides whether a formal hearing is warranted. Should such a hearing proceed, the accused student must be notified as soon as possible of the following: (1) the specific charge(s) of dishonesty; (2) the time and place of the hearing; (3) the nature of the evidence that will be presented against the student; and (4) the range of potential penalties that may be imposed in the event the committee finds that academic dishonesty has occurred. *See* Code, p. 9.

The Code explicitly provides students who are subject to academic dishonesty investigations the following rights:

- The opportunity to consult a Brown faculty or administrative advisor on matters of preparation for the hearing, hearing procedures, and possible outcomes;

- A list of persons from within the University community who, by prior experience, can provide knowledge and advice;

- The opportunity to dispute the evidence supporting the charge, and to examine any witnesses;

4

- The opportunity to present evidence and witnesses in support of her defense; and

- The right to avoid self-incrimination by declining to answer.

*See* Code, p. 10.

Hearings are conducted and decisions made by a Standing Committee on the Code, consisting of a dean from the accused student's school, plus two faculty administrators. If a student is found to be in violation of the Code, the Committee will determine an appropriate sanction and convey it to the accused student by letter. *See* Code, pp. 10-11. A student found in violation of the Code may appeal the decision to the Dean of the College. *See* Code, p. 11.

### III.   The investigation and adjudication.

Subsequent to Plaintiff's submission of the Exam, Defendant Clark's teaching assistant, Jessica Shoaff, allegedly noticed similarities between Plaintiff's and T.L.'s answers to Exam question number four. (Cmplt. ¶ 50.) On December 1, 2013, Ms. Shoaff contacted Plaintiff by email, instructing her to contact Defendant Clark and set up a time to meet to discuss her Exam. (Cmplt. ¶ 51.)

On December 2, 2013, Plaintiff met with Defendant Clark to discuss the apparent similarities between Plaintiff's and T.L.'s responses to Exam question number four *only*. (Cmplt. ¶ 52.) Plaintiff's responses to Exam questions number one, two and three were not addressed. *Id.* Plaintiff acknowledged that she and other students, including T.L., had collaborated on the Exam, consistent with the students' understanding of the class protocol. *Id.* Plaintiff advised Defendant Clark that the majority of the students in the class had worked in groups, as Defendant Clark regularly encouraged collaboration and group discussions in her course. *Id.* Defendant Clark appeared skeptical and did not ask Plaintiff to identify any of the other students who had collaborated on the Exam. *Id.*

On December 9, 2013, Plaintiff received an e-mail from Defendant Clark stating that she had spoken with Defendant Dennis regarding Plaintiff's Exam and that the next step would be for Defendant Dennis' office to review the materials and meet with Plaintiff. (Cmplt. ¶ 53.) Thereafter, Plaintiff met with Defendant Dennis, who had at the time been employed by Brown as Deputy Dean of the College for less than one semester. Defendant Dennis explicitly advised Plaintiff that the allegations against her related to apparent similarities between Plaintiff's and T.L.'s responses to Exam question number four *only*. (Cmplt. ¶ 54.) Plaintiff acknowledged that she had collaborated with five to seven other students on the Exam; that no written or oral instruction prohibiting collaboration was provided; and that the majority of the students in the course had worked with others, as that was the generally understood methodology for Defendant Clark's course. (Cmplt. ¶ 54.) Given his considerably limited experience with Brown's disciplinary process and procedures, at no time did Defendant Dennis, or any other administrator or faculty member of Brown, advise Plaintiff, either verbally or in writing, of her procedural rights during the investigation.

On December 13, 2013, Defendant Dennis' office informed Plaintiff that the matter was being assigned to the Committee on the Academic Code (the "Committee") for an Academic Code violation hearing (the "Hearing"). (Cmplt. ¶ 56.) On December 17, 2013, Plaintiff submitted a statement to the Committee acknowledging that she collaborated with T.L. on the Exam concerning an "intervention pathway" the students had developed, without it being clear who (if either) was originally responsible. (Cmplt. ¶ 57.) Plaintiff also stated that she was unaware student collaboration was not allowed on the Exam. *See* Exhibit 1 to Defendants' Motion to Dismiss.[1]

---

[1]     Plaintiff disputes Brown's use of appended Exhibits 1-4 within the framework of a Rule 12(b)(6) Motion to Dismiss.  The documents in question are part of a broader factual record which must be developed through

In its Memorandum in Support of Motion to Dismiss (p. 11), Defendants treat Plaintiff's December 18, 2013 statement as an admission of guilt. This is not a fair assessment of the document itself or the context in which it was presented.  Plaintiff did not believe that she was being investigated with regard to the first three questions of the four-question Exam; therefore, she did not believe any acknowledgement she made would affect her penalty. Moreover, her conduct amounted to a good-faith misunderstanding of the need to provide quotations for Questions 1 and 2 (which were from a passage provided as part of the examination), and she submitted that she provided her own ideas as part of the collaborative effort to answer Question No. 3. As part of her request for reconsideration, Plaintiff clarified these issues further, indicating that her answers to these questions were her own work, and that she shared them with classmate T.L., who apparently claimed that Plaintiff had copied her work.  *See* Exhibit 3 to Defendants' Memorandum *and* n. 1, *supra* (raising issues regarding Defendants' reference to extraneous materials in a Rule 12(b)(6) Motion to Dismiss).

On December 18, 2013, merely five days after first learning of the charge against her, Plaintiff attended the Hearing before the Committee. (Cmplt. ¶ 58.) Subsequent to the Hearing, on January 6, 2014, Defendant Dennis notified Plaintiff that the Committee had found Plaintiff in violation of the Code; namely, "engaging in collaboration or unauthorized assistance on take-home examinations or assignments." (Cmplt. ¶ 58.)

The Committee imposed the following sanctions upon Plaintiff: (1) a one-semester suspension; (2) transcript notation of the suspension; (3) transcript notation of "Directed No Credit in Public Health 320"; (4) transcript notation of "violation of the Academic Code"; (5) parental notification; (6) denial of any future institutional letter of support or discussion of the

---

discovery and resolved, if possible, in a motion for summary judgment after discovery has concluded.  *See* Section XI, pp. 49-50, *infra*.  Also, Defendants seek to use the documents to supplement inadmissible hearsay and/or disputed matters into the record of background facts.  *See* n. 3, *infra*.

offense in such letter; and (7) termination of general university access and privileges (collectively, the "Sanction"). (Cmplt. ¶ 59.)

### IV.    Brown's limited investigation.

Defendants failed to engage in a thorough and meaningful investigation regarding the alleged misconduct, in violation of Plaintiff's rights to due process. For instance, upon information and belief, Defendants failed to interview a single witness who could provide knowledge relevant to the Incident, including the general structure and methodology of Defendant Clark's class; whether oral or written instructions prohibiting collaboration were ever given by Defendant Clark prior to the Exam; and the degree of collaboration utilized by the majority of the students. (Cmplt. ¶ 62.) Further, upon information and belief, Defendants failed to review or gather any documentary evidence in support of Defendant Clark's allegations. Thus, assuming *arguendo* that the Court will accept hearsay statements as a valid supplement to the record of a Rule 12(b)(6) Motion to Dismiss,[2] the Committee accepted at face value Defendant Clark's claims that she gave an oral instruction prohibiting collaboration on three separate occasions (November 4, 2013; November 6, 2013 and November 11, 2013) despite the lack of any corroborating evidence. (Cmplt. ¶ 62.)[3]

In fact, Plaintiff advised Defendant Clark that the majority of the students in the class had worked together in groups on the Exam. Yet, no attempt was made to investigate or interview any of the approximately 200 other students in Public Health 320. (Cmplt. ¶ 63.)   In its Memorandum (p. 2), Defendants maintain that it is sufficient that a finding that Plaintiff violated

---

[2]      *See* pp. 6-7, n. 1, *supra*.

[3]      To be clear, all Plaintiff knows (and all the Court can assume at this stage of the proceedings) is that Defendant Klawunn wrote a letter to Plaintiff in which Defendant Klawunn claims that Defendant Clark told her of these three dates.  Plaintiff has not had the opportunity to test the accuracy of Defendant Klawunn's recollection of what Defendant Clark said to her, never mind the accuracy of whatever Defendant Clark actually said.  Needless to say, Plaintiff does not agree that this Court should decide a Rule 12(b)(6) Motion to Dismiss on what are essentially assumed and possibly disputed facts.

the Code can stand on its own regardless of whether everyone else was doing the same thing; however, this takes the concept of prosecutorial discretion to an illogical and unsustainable extreme.

Had Brown conducted even a minimal investigation, it would have come to the opposite conclusion, namely: (1) that the students in Defendant Clark's class never received any written instructions prohibiting collaboration on the Exam; (2) none of the students in Defendant Clark's course recalled Defendant Clark's alleged oral instruction prohibiting collaboration on any of the "three separate" occasions; (3) the students either specifically recalled that *no* instruction prohibiting collaboration was given, or did not recall whether any instruction was ever given; and (4) that every student in Defendant Clark's class understood collaboration was permitted on the Exam. (Cmplt. ¶ 64.) It is therefore reasonable to conclude that either Defendant Clark fabricated this alleged non-collaboration instruction, or that there was substantial confusion among the 200 students as to whether collaboration was permitted or prohibited. (Cmplt. ¶ 64.)

Further, in making its Decision, the Committee concluded that Plaintiff received assistance from T.L. on the responses to her entire Exam. (Cmplt. ¶ 66.) Yet, even a modest inquiry by Brown would have revealed that the only Exam question on which Plaintiff collaborated with T.L. was on Exam question number four. (Cmplt. ¶ 66.)

Notably, Defendants completed the entire investigation process, from the date Plaintiff was notified of the charges, to the date the Decision was issued, in just 24 days (inclusive of the December holiday break). (Cmplt. ¶ 67.) Any claim that Defendant Klawunn or the Committee thoroughly reviewed and compared *all 200 examinations* during this time period is implausible. Such a short-lived and apathetic investigation into a charge as serious as plagiarism clearly negates any claim that Brown conducted a thorough and impartial investigation. (Cmplt. ¶ 67.)

## V.    **The Hearing's procedural deficiencies**

Brown failed to provide Plaintiff with many of the protections set forth in the Code,

including the following:

- Prior to the Hearing, Brown did not notify Plaintiff of the specific charges of the allegations or the nature of the evidence against her.  Instead, Defendant Dennis explicitly advised Plaintiff that the specific charges against her related to the apparent similarities between Plaintiff's and T.L.'s responses to Exam question number four *only*. (Cmplt. ¶ 71.) However, when Plaintiff appeared before the Committee on December 18, 2013, Plaintiff discovered that she was in fact being charged with a violation of the Code with regard to her responses on the *entire* Exam. *Id.*

- Brown did not provide Plaintiff with copies of the materials that supported the claim she collaborated with others, instead providing Plaintiff only with a highlighted copy of her own Exam. (Cmplt. ¶ 71.)

- Brown did not advise Plaintiff of the range of penalties that could be imposed if the Committee found her responsible for a violation of the Code. Rather, Defendants improperly advised Plaintiff that penalties would be imposed upon her, unless she admitted to engaging in the alleged misconduct. (Cmplt. ¶ 72.)

- Brown did not provide Plaintiff with a list of members of the University community who could assist her through the process, instead leaving her to navigate the confounding investigative process on her own. (Cmplt. ¶¶ 76, 134.)

- Brown did not require, or take any steps to ensure, that Defendant Clark appeared before the Committee at the Hearing of December 18, 2013. Rather, upon information and belief, Defendant Dennis presented Defendant Clark's version of the events for her, while Defendant Clark was not required to be present. (Cmplt. ¶ 75.)

- Brown did not provide Plaintiff with an impartial setting in which to present her case; instead, Committee members were openly hostile and demeaning toward Plaintiff. (Cmplt. ¶ 77.) Despite Defendant Dennis' previous assurances that the Committee members would operate from a clean slate and have no background knowledge of Plaintiff, two of the Committee members were involved in the investigation of a prior wrongful allegation of academic dishonesty against Plaintiff, which was expunged. *Id.* Undoubtedly, this knowledge led to a predisposition against Plaintiff and prevented these Committee members from operating in an unbiased and impartial manner. *Id.* Indeed, the Academic Code's requirement that faculty members serve staggered terms on the committee serves to ensure that in the event a student is charged with a second allegation of

misconduct, his or her case will be adjudicated by impartial and neutral decision makers who are unaware of the previous offense. (Cmplt. ¶ 77.)

- Brown did not provide Plaintiff the opportunity to question her classmate T.L. who identified herself as the source of the material that appeared on both students' examinations. (Cmplt. ¶ 78.) Instead, Committee members heard T.L.'s case first, and did not require T.L. to attend Plaintiff's hearing. As a result, Brown denied Plaintiff the opportunity to question all witnesses against her. Further, Plaintiff was placed at a disadvantage in that T.L. was given the opportunity to establish her credibility and present her version of the events to the Committee prior to Plaintiff. Consequently, the Committee members seemingly formed predetermined opinions about the underlying facts prior to the commencement of Plaintiff's Hearing. Thus, Plaintiff was deprived of the right to defend herself and present her version of the events before an unbiased and impartial panel. (Cmplt. ¶ 78.)

Not surprisingly, the Committee demonstrated a clear predisposition against Plaintiff, presuming her to be guilty from the moment she walked into the hearing room. (Cmplt. ¶ 78.) Specifically, the Committee accused Plaintiff of copying the answers to all four Exam questions, even though, upon information and belief, the charge of alleged misconduct focused solely on Plaintiff's response to Exam question number four. (Cmplt. ¶ 79.) Yet, Plaintiff was denied the opportunity to present her account of the events or otherwise defend herself in any capacity. (Cmplt. ¶ 79.) Thus, the Hearing afforded to Plaintiff was nothing more than a sham, used simply as a method by which to bully and intimidate her into submissively accepting an unjustified and severe penalty. (Cmplt. ¶ 79.)

## VI.    **The Appeal.**

Defendant Klawunn issued a decision on Plaintiff's appeal on January 23, 2014 (the "Appeal Decision"), which revealed additional flaws in Brown's investigation and adjudication process. (Cmplt. ¶ 81.) Specifically, Plaintiff was forced to seek enrollment at another institution while the appeal was pending, which posed various logistical issues including obtaining approval for transfer credits from multiple professors during finals period and over the holiday break.

Indeed, Defendant Klawunn issued the Appeal Decision on January 23, 2014, notwithstanding that Jane Doe's enrollment deadline for the spring 2014 semester expired on January 22, 2014. (Cmplt. ¶ 100.) Consequently, even if Plaintiff ultimately succeeded on her appeal, a post January 22, 2014 reversal of the Decision by Defendant Klawunn would have been a fruitless victory for Plaintiff, as she would not be able to timely enroll for the spring semester or graduate with her classmates at the end of the year. (Cmplt. ¶ 99.) Defendant Klawunn undermined Plaintiff's procedural rights to a fair appeal when she issued the Appeal Decision after the spring semester had already commenced; the Appeal itself was futile in that it could never have reversed the punishment meted out by Brown. (Cmplt. ¶¶ 99-100.) The appeal process employed by Defendants was therefore nothing more than a farce by which to further their campaign of harassment against Plaintiff by reaching a predetermined outcome.

Moreover, in issuing her Appeal Decision, Defendant Klawunn apparently accepted Defendant Clark's claims (to the extent she made those claims, *see* p. 8, n. 3, *supra*) as more credible than Plaintiff's, despite the lack of any corroborating evidence for Defendant Clark's three alleged instances of oral instruction, or a detailed review of *every other exam* in the class. (Cmplt. ¶ 83.) In fact, the evidence on which Defendant Klawunn seemingly relied in reaching her decision was never presented at the Hearing for Plaintiff to confront, or at any other time, further evidencing the unfair, illogical and arbitrary procedures employed by Defendants in this matter. (Cmplt. ¶ 83.)

Furthermore, should the Court choose to review extraneous material outside the pleadings,[4] Defendant Klawunn's written decision is emblematic of Brown's failure to properly investigate, understand and punish the collaboration between Plaintiff and T.L. (Cmplt. ¶ 84.) Plaintiff was disciplined on the grounds that Defendant Clark purportedly communicated to her

---

[4]        *See* p. 7,  n. 1, *supra*.

class that collaboration was prohibited on the Exam. (Cmplt. ¶ 84.) Yet, Defendant Klawunn's

Appeal Decision directly refutes Defendant Clark's allegation. (Cmplt. ¶ 84.) Specifically, the

Appeal Decision states the following:

> Even if there was some confusion about this instruction [not to
> collaborate] because other assignments for the class could be done in
> groups, no other exam in the class included the extent of shared work that
> was evident in your exam.

Even if one assumes, arguendo (and contrary to the spirit of the document, the intent of

the parties and fundamental notions of due process), that the Code permitted Brown University

to engage in selective enforcement of some instances of undocumented and unauthorized

collaboration but not others based on an undisclosed, subjective assessment of degree, nowhere

does Brown assert that it reviewed all 200 exams to determine "the extent of shared work"

contained in Plaintiff's Exam. (Cmplt. ¶85.) Furthermore, Dean Klawunn's decision did not

provide any guidance as to what degree of collaboration was allowed on the Exam, leaving

Plaintiff to surmise as to how Brown determined that the level of collaboration observed on her

Exam only was impermissible. Thus, Brown arbitrarily imposed sanctions upon Plaintiff based

on a vague and unspecified level of "shared work." (Cmplt. ¶ 85.)

Consequently, the acceptance at face value of Defendant Clark's uncorroborated

allegations and arbitrary imposition of sanctions upon Plaintiff demonstrated a clear bias against

the student accused, in violation of Plaintiff's rights to fair process.

## ARGUMENT

## I.

## THE LEGAL STANDARD GOVERNING MOTIONS TO DISMISS

In *Morales v. Chadbourne*, 996 F. Supp. 2d 19, 26-27 (D.R.I. 2014) *aff'd in part,*

*dismissed in part,* 793 F.3d 208 (1st Cir. 2015) (internal quotation marks and citation omitted),

this Court described the factual record upon which to review a motion to dismiss under Rule

12(b)(6) as follows:

> In considering a motion to dismiss pursuant to Rule 12(b)(6), the court will first
> discard bald assertions and conclusory allegations. *See Ashcroft v. Iqbal,* 556 U.S.
> 662, 681, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); *Ocasio–Hernandez v.
> Fortuno–Burset,* 640 F.3d 1, 12 (1st Cir.2011). Then the court must "view the
> well-pleaded facts in the light most favorable to the non-moving party, drawing
> all reasonable inferences in its favor." *Gray v. Evercore Restructuring, LLC,* 544
> F.3d 320, 324 (1st Cir.2008); *Gagliardi v. Sullivan,* 513 F.3d 301, 305 (1st
> Cir.2008). The Court cannot dismiss a "complaint [that] satisfies Rule 8(a)(2)'s
> requirement of a 'short and plain statement of the claim showing that the pleader
> is entitled to relief.' " *Ocasio–Hernandez,* 640 F.3d at 11 (quoting Fed.R.Civ.P.
> 8(a)(2)). In other words, a complaint satisfies what is required at the pleading
> stage if the court finds the complaint as a whole contains "enough detail to
> provide a defendant with **\*27** 'fair notice of what the (...) claim is and the grounds
> upon which it rests.' " *Id.* at 12 (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S.
> 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The First Circuit has
> cautioned against "thinking of plausibility as a standard of likely success on the
> merits." *Sepulveda–Villarini v. Dept. of Educ. of P.R.,* 628 F.3d 25, 30 (1st
> Cir.2010). "For pleading purposes, circumstantial evidence often suffices to
> clarify 'a protean issue such as an actor's motive or intent.' " *Rodriguez–Reyes v.
> Molina–Rodriguez,* 711 F.3d 49, 56 (1st Cir.2013) (quoting *Anthony v. Sundlun,*
> 952 F.2d 603, 605 (1st Cir.1991)).

To pass through the plausibility screen, a complaint does not have to evince a "one-to-

one relationship between any single allegation and a necessary element of the cause of action."

*Rodríguez–Reyes v. Molina-Rodriguez,* 711 F.3d 49, 55 (1st Cir. 2013). Rather, the plausibility

standard should be applied to the claim as a whole. The critical question is whether the claim,

viewed holistically, is made plausible by "the cumulative effect of the factual allegations"

contained in the complaint. *Ocasio–Hernández v. Fortuño–Burset,* 640 F.3d 1, 14 (1st Cir.2011);

*see also A.G. ex rel. Maddox v. v. Elsevier, Inc.,* 732 F.3d 77, 82 (1st Cir. 2013).

Accordingly, the relevant question for a district court in assessing plausibility is not

whether the complaint makes any particular factual allegations but, rather, whether "the

complaint warrant[s] dismissal because it failed *in toto* to render plaintiffs' entitlement to relief

plausible." *Twombly, supra,* 550 U.S. at 569 n. 14. *See Braden v. Wal–Mart Stores, Inc.,* 588 F.3d 585, 594 (8th Cir.2009) (explaining that "the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible"); *Ocasio-Hernandez v. Fortuno-Burset, supra,* 640 F.3d at 14-15 ("[n]o single allegation need "lead to the conclusion"—in the district court's words—of some necessary element, provided that, in sum, the allegations of the complaint make the claim as a whole at least plausible"); *Sepúlveda–Villarini v. Dep't of Educ. Of Puerto Rico,* 628 F.3d 25, 29 (1st Cir. 2010) ("[t]he make-or-break standard ... is that the *combined* allegations, taken as true, must state a plausible, not a merely conceivable, case for relief") (emphasis added).

Thus, a Court is to consider a motion to dismiss in terms of the plaintiff's actual pleadings in the complaint, and not in terms of a defendant's selective characterization of the facts. *See Armstrong Pharm., Inc. v. Micron Technologies, Inc.,* No. CIV. A 09-11197-RWZ, 2010 WL 745057, at *2 (D. Mass. 2010); *see also Hudson v. Dr. Michael J. O'Connell's Pain Care Ctr., Inc.,* 822 F. Supp. 2d 84, 93 (D.N.H. 2011).

Accepting all allegations in the Complaint as true, Plaintiff has undoubtedly pleaded facts sufficient to establish plausible claims for relief and Defendants' Motion to Dismiss must therefore be denied in its entirety.

## II.

## THE COMPLAINT STATES A CLAIM FOR BREACH OF CONTRACT

As an initial matter, Defendants contend that Plaintiff's claims must fail because courts generally afford significant deference to colleges and universities with respect to academic decisions. (Defendants' Mem. at 15). However, Defendants erroneously equate "significant deference" in this context to full deference, thus removing any academic decision from the reach

of judicial scrutiny.  Critical examination of the allegations as a whole and controlling case law in Rhode Island leads to the contrary conclusion; namely, that while a degree of deference is afforded to academic decisions, such deference does not permit colleges and universities to act arbitrarily and capriciously by failing to abide by its stated policies and procedures or denying its students fundamental fairness.

## 2.  The Controlling Standard

Although courts generally grant colleges and universities significant deference in academic decisions, this does not permit academic institutions to act arbitrarily. Thus, when an academic institution exercises its discretion arbitrarily or irrationally, as in the instant action, judicial intervention is warranted. *See, e.g., Connelly v. Univ. of Vt. & State Agr. Coll.*, 244 F. Supp. 156, 159 (D. Vt. 1965); *Morales v. New York Univ.*, 83 A.D.2d 811, 442 N.Y.S.2d 12, *aff'd*, 55 N.Y.2d 822, 432 N.E.2d 140 (1981). Contrary to Defendants' contentions, although public policy considerations dictate that courts should be wary of intervening in controversies involving academic standards, the decisions of educators are not "completely immune from judicial scrutiny." *Olsson v. Bd. of Higher Educ.*, 49 N.Y.2d 408, 413, 426 N.Y.S.2d 248, 402 N.E.2d 1150 (N.Y. 1980). Further, academic institutions have an obligation to "act in good faith in its dealings with its students." *Olsson v. Bd. of Higher Educ., id.,* 49 N.Y. 2d at 14.

As noted by Defendants, Rhode Island courts follow the majority rule of viewing the relationship between a private college and its students as contractual in nature. Thus, students subjected to discipline are entitled to those procedural safeguards which the school specifically provides. "The general rule, therefore, has been that where a private university or college establishes procedures for the suspension or expulsion of its students, substantial compliance with those established procedures must be had before a student can be suspended or expelled."

_Boehm v. Univ. of Pennsylvania Sch. of Veterinary Med.,_ 392 Pa. Super. 502, 509-10, 573 A.2d 575, 579 (1990); _citing Tedeschi v. Wagner College,_ 49 N.Y.2d 652, 427 N.Y.S.2d 760, 404 N.E.2d 1302 (1980). When a University puts forth rules of procedure to be followed in the disciplinary process, it must follow those rules; failure to do so would allow the University to avoid its own rules whenever it chooses, reducing the procedures to "a meaningless mouthing of words." _Tedeschi v. Wagner College,_ 49 N.Y.2d at 662.

Further, "in recent years the courts have become more willing to grant judicial review of rules promulgated by private colleges and universities and have required that such rules comport with basic notions of due process and fundamental fairness." _Boehm v. Univ. of Pennsylvania Sch. of Veterinary Med., supra,_ 392 Pa. Super. at 509-10. Consequently, while courts have an interest in giving judicial deference to an academic institution's decision-making process, courts also must balance the interest of safeguarding students from unfair procedures that result in arbitrary or capricious decisions. _See Beauchene v. Mississippi Coll._, 986 F. Supp. 2d 755, 769 (S.D. Miss. 2013), _appeal dismissed_ (Feb. 18, 2014).

Contrary to Defendants' claims, there is a broad body of case law in which courts recognize that students, or former students, have a contract-based right to relief from their private college or university's adverse academically-based decisions. _See, e.g., Paulin v. George Washington University School of Medicine_, 878 F.Supp.2d 241 (D.D.C. 2012) (student challenging dismissal for inadequate academic performance can proceed on claim that university's decision was arbitrary and capricious, including inconsistencies and contradictions in evaluations and grading policies); _Atria v. Vanderbilt University_, 142 Fed. Appx. 246 (6th Cir. 2005) (student accused of honor code violation when professor suspects him of altering test sheet before asking that it be re-graded, summary judgment will be denied to college where student

presents evidence he was denied procedural rights set forth in the Honor Council's procedural rules set forth in the Student Handbook); *Sharick v. Southeastern University of the Health Sciences, Inc.*, 780 So. 2d 136 (Fl. Dist. Ct. App. 3d Dist. 2000) (medical student who was given failing grade in final course entitled to damages for breach of implied contract where jury found college's decision was arbitrary and capricious); *Morehouse College v. McGaha*, 277 Ga. App. 529, 627 S.E. 2d 39 (upholds jury award of damages on breach of contract claim brought by student expelled him for honor code violation related to alleged fraud in nonpayment of tuition based on university's failure to comply with student handbook provision that student will receive a "fundamentally fair" hearing on misconduct charges), *cert. denied,* 2006 Ga. LEXIS 434; *Brody v. Finch University of Health Sciences/The Chicago Medical School*, 298 Ill. App. 3d 146, 232 Ill. Dec. 419, 698 N.E. 2d 257 (2nd Dist.) (pre-med students who are rejected from medical school based on claimed academic deficiencies have breach of implied contract claim), *app. denied*, 179 Ill. 2d 578, 705 N.E. 2d 434 (1998); *Fussell v. Louisiana Business College of Monroe, Inc.*, 478 So.2d 652 (La. Ct. App. 2nd Cir. 1985) (student expelled from business college for alleged disruptive conduct established a *prima facie* breach of contract claim where college fails to identify any standards in course catalog that she violated); *Clogher v. New York Medical College*, 112 A.D.3d 574, 976 N.Y.S.2d 198 (App. Div. 2013) (student stated breach of contract cause of action against medical college where college failed to provide her with personalized academic plan specified in student handbook).

For instance, in *Liu v. Northwestern University*, 78 F. Supp. 3d 839 (N.D. Ill. 2015), a former law school student filed a complaint against Northwestern University, alleging the school breached its contract with her by failing to afford her the due process procedures established in its student handbook for suspected violations of academic integrity and violations of the student

code of conduct. The court held plaintiff stated a claim for breach of contract against the university on the grounds that the university's student handbook provided that students charged with, or suspected of, violations of standards of academic integrity would be accorded specific rights. The court found the university departed from accepted academic norms in its treatment of the plaintiff by placing unreasonable academic conditions on her, without allowing her access to the procedures set forth in the student handbook to challenge such charges.

Following this line of cases, Plaintiff is not asking this Court to review the merits of Brown's academic decision; rather, Plaintiff seeks relief based on violations of specific procedural rights set forth in Brown's Academic Code.

### 3. Brown's denial of Plaintiff's due process rights set forth in the Code support a cause of action for breach of contract.

Though acknowledging that a private contract has been formed between Plaintiff and Brown University, Defendants assert the Complaint fails to state a claim for breach of contract on the grounds that the Complaint is unclear as to which allegations were intended to support which cause of action. Not only does the Complaint explicitly identify four specific contractual provisions breached by Defendants, but it also discusses in sufficient detail the basis for each breach. (*See* Cmplt. ¶¶ 116-138.) Significantly, even if the Complaint had not identified specific breaches within the cause of action itself, it is well recognized that incorporating allegations by reference is an appropriate method of pleading. Here, viewing the factual allegations as a whole, the Complaint plausibly supports a finding that Defendants breached various provisions of the contract with Plaintiff.

Moreover, as Defendants acknowledge, the standard governing the relationship between a private university and a student is one of reasonable expectation. "The student-college relationship is essentially contractual in nature." *Mangla v. Brown Univ.*, 135 F.3d 80, 83 (1st

Cir. 1998). The terms of the contract may include statements made in student handbooks or manuals. *Id.; see also Gorman v. St. Raphael Academy*, 853 A.2d 28 (R.I. 2004). The proper standard for interpreting contractual terms between a university and a student is that of "reasonable expectation—what meaning the party making the manifestation, the university, should reasonably expect the other party to give it." *Mangla,* 135 F.3d at 83 (internal quotation marks and citation omitted).

### a. <u>Waiver is not a defense.</u>

Overlooking the explicit rights afforded to a student accused of misconduct, Defendants contend they did not breach their contract with Plaintiff because she did not allege that "she wished to question those witnesses as part of her presentation to the Committee." (Defendants' Mem. at 19). Imputing a duty on Plaintiff to demonstrate her intent to exercise a contractually provided right cannot be reconciled with an objective reading of the Code. Defendants' assertion that the rights contractually provided to Plaintiff would not take effect absent Plaintiff's express indication that she wished to exercise such rights is disingenuous. There is nothing in Brown's Code which would lead a reasonable person in Plaintiff's position to conclude that the enumerated rights are contingent upon the accused specifically notifying Defendants of his or her desire to exercise such rights.

Significantly, Brown's contract with its matriculating students is a classic adhesion contract. Brown dictates the terms of the contract and the matriculating student has two options: either accept the terms as is, or matriculate elsewhere (where perhaps another school unilaterally imposes equally or more onerous terms). Moreover, the contract is often formed while the student is still a minor at the time she accepts Brown's  offer of admission.  In fact, Jane Doe was

17 years old, a minor, at the time she was offered, and accepted, admission to Brown in December 2009.

Given the issues surrounding the ability of a minor to enter into a valid and enforceable contract, and the fact that the matriculating student has no negotiating power over the terms of the Academic Code, Brown had an affirmative duty to provide Jane Doe with a comprehensive overview of the disciplinary process at the time of her enrollment. Brown could not thereafter pick and choose what components of the process to reiterate to Jane Doe, or accept at face value that Jane Doe was making a knowing and informed waiver of her rights. *See* *In re Apple In-App Purchase Litig.*, 855 F. Supp. 2d 1030, 1036 (N.D. Cal. 2012) ("[a] minor's lack of capacity to contract affects only the ability of the other party to enforce the contract against the minor, not the minor's ability to enforce the contract against the other party").

Brown's proceedings here, in which a student claims due process rights based on a contract, admit to analogies to both procedural due process law and contract law regarding waiver.  Both analogies support a finding of liability.

With regard to due process law, Defendants do not claim they either informed Plaintiff of her rights at the time of the hearing, or that Plaintiff was aware of her rights from another source. In many contexts, courts will not find a waiver of procedural rights unless the waiver is knowing and voluntary. *See, e.g., Miranda v. Arizona*, 384 U.S. 436, 471-72, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) (holding that an individual held for interrogation must be clearly informed that he has a right to consult with a lawyer and to have a lawyer with him during interrogation; this warning, among others, is an absolute prerequisite to interrogation such that no amount of circumstantial evidence demonstrating the individual was aware of this right will suffice in its place.) Though clear that a defendant to a criminal proceeding is entitled to greater procedural rights and

protections, fundamental fairness would nonetheless dictate that the procedural rights guaranteed by a school's student handbook must be provided to a student accused of academic misconduct.

With regard to contract law, Rhode Island contract law is clear that a party's waiver must be knowing and voluntary to be effective.  The Rhode Island Supreme Court described this requirement in _Sturbridge Home Builders Inc. v. Downing Seaport, Inc._, 890 A.2d 58, 65 (R.I. 2005), stating:

> [W]aiver is the voluntary, intentional relinquishment of a known right. It results from action or nonaction * * *." _Lajayi,_ 860 A.2d at 687 (quoting _Haxton's of Riverside v. Windmill Realty, Inc._, 488 A.2d 723, 725 (R.I. 1985)). The party claiming that there has been a waiver of a contractual provision has the burden of proof on that issue." _1800 Smith Street Associates, LP v. Gencarelli_, 888 A.2d 46, 55 n. 4 (2005); _see_ 28 Am.Jur.2d _Estoppel and Waiver_ § 225 (2000) ("The party claiming a waiver has the burden of proof of the facts on which the party relies to establish such a waiver, and unless such proof is forthcoming the party cannot sustain the claim."). "A waiver may be proved indirectly by facts and circumstances from which intention to waive may be _clearly inferred_ [.]" 28 Am.Jur.2d at § 225. (Emphasis added). On summary judgment, the party asserting waiver of a contract term has the affirmative duty to produce evidence demonstrating the existence of an issue of fact concerning the voluntary relinquishment of a known right.

Further, "[i]mplied waiver of a legal right must be proved by a clear, unequivocal, and decisive act of the party who is alleged to have committed waiver." _Ryder v. Bank of Hickory Hills_, 146 Ill.2d 98, 585 N.E.2d 46, 49 (1991). "An implied waiver may arise where a person against whom the waiver is asserted has pursued such a course of conduct as to sufficiently evidence an intention to waive a right or where his conduct is inconsistent with any other intention than to waive it." _Id._ (quoting _Kane v. American National Bank & Trust Co._, 21 Ill.App.3d 1046, 316 N.E.2d 177, 182 (1974)).

**b.  The degree of prejudice affects the extent of damages, but not the existence of an actionable breach of contract.**

Defendants contend that this Court should require Plaintiff to demonstrate "substantial prejudice" in order to succeed on her breach of contract claims. (Defendants' Mem. at 23-26). Significantly, this contention is perfunctory and includes no supporting case law. Although the element of "substantial prejudice" applies in the context of constitutional due process, it has no application here, where there is no dispute that the educational contract at issue was formed between an individual and a private university.  (Without conceding the issue of the extent of Plaintiff's damages, Rhode Island law permits the award of nominal damages in breach of contract actions.  *Kent v. Halliday*, 23 R.I. 182, 49 A. 700 (1901)).

Defendants acknowledge that the Complaint does not a make a procedural due process claim; the procedural violations delineated in the Complaint stem from a violation of the rights and procedures guaranteed by Brown's own Code. (Defendants' Mem. at 23-26). Further, contrary to Defendants' mischaracterization of the facts, it must be reiterated that Plaintiff *never* admitted to any wrongdoing. Although she acknowledged that she did collaborate on the Exam, she consistently maintained that she thought such collaboration was permitted. (Cmplt. ¶ 57.) Notwithstanding, the cases relied upon by Defendants in support of their position are distinguishable.

First, none of the cases cited by Defendants in support of their position occur in the context of a private college or university. Second, in each of the cases cited by Defendants, the plaintiffs readily admitted to wrongdoing. *See Watson ex rel. Watson v. Beckel*, 242 F.3d 1237, 1242 (10th Cir.2001) (where a military student at a public school was expelled after admitting that he assaulted his roommate, the student's claim for a violation of procedural due process failed because additional notice would not have allowed him to better defend his claim); *see also*

23

_Shoemaker v. City of Howell_, 795 F.3d 553 (6th Cir. 2015) (where plaintiff failed to keep vegetation on his lawn below eight inches in violation of a city ordinance, the court found plaintiff waived his right to mount a procedural due process claim when he readily conceded that he did not comply with the ordinance and received notice of a violation at least six times over 16 months); _Graham v. Mukasey_, 519 F.3d 546 (6th Cir. 2008) (alien who entered United States illegally and pleaded guilty to two counts of conspiracy to commit mail fraud could be deported only after proceedings conforming to traditional standards of fairness encompassed in due process of law); _Jahn v. Farnsworth_, 33 F. Supp. 3d 866, 869 (E.D. Mich. 2014), _aff'd_, No. 14-1916, 2015 WL 3938035 (6th Cir. June 29, 2015) (plaintiff tragically committed suicide after he was accused of, and admitted to, stealing a teacher's laptop at a public high school); _S.K. v. Anoka-Hennepin Indep. Sch. Dist. No. 11_, 399 F. Supp. 2d 963, 968 (D. Minn. 2005) (students at public middle school admitted to shooting student in the back with a BB gun resulting in suspension).

Evidently, none of the aforementioned cases cited by Defendants either occurred at a private college or university, or related to an academic discipline investigation. It is unclear how Defendants utilize these cases to support their allegations that Plaintiff in the instant matter must demonstrate substantial prejudice. Thus, there is no support for Defendants' claim that Plaintiff must establish "substantial prejudice" in order to succeed on her breach of contract claim and this proposition must be rejected. Finally, Brown's Academic Code recognizes "[t]he University expects that members of the Brown community will be truthful and forthright" and "Brown students are expected to tell the truth." Code at pp. 3, 5. Yet here, Brown penalized Plaintiff's candor about the conduct engaged in by affirmatively denying the procedural rights guaranteed to her by the Code. Defendant Brown ignores the fact that Plaintiff as at all times stated very

clearly that she collaborated on the Exam because it was understood by all the students that collaboration was allowed. This was a point that Plaintiff was entitled to argue, yet was denied the opportunity to do so when Brown failed to abide by its stated policies and procedures. Certainly, Plaintiff's acknowledged collaboration does not relieve Defendants of their duty to comply with their contractual obligations.

### c.  Specific Due Process Violations Claimed

### i.  The Right to Examine Adverse Witnesses.

Brown's Academic Code provides an accused student with the "right to dispute the evidence against him or her and the right to present evidence and witnesses of his or her own to support his or her case, [and] to examine any witnesses against him or her." Code, p. 11.

As outlined in the Complaint, Brown breached its contract with Plaintiff when it did not require, or take any steps to ensure, that Defendant Clark appeared before the Committee at the Hearing of December 18, 2013. Rather, upon information and belief, Defendant Dennis presented Defendant Clark's version of the events for her, while Defendant Clark was not required to be present. (Cmplt. ¶ 75.) This was problematic for several reasons:

- Defendant Clark, as the complainant, was the primary witness regarding the charges made against Plaintiff. Defendant Clark's failure to appear at the Hearing therefore denied Plaintiff the opportunity to examine all witnesses against her, in violation of Brown's own policy and Plaintiff's right to an impartial and fair proceeding;

- Defendant Dennis' role in the adjudication process was to act as an unbiased facilitator. Yet, by presenting Defendant Clark's allegations against Plaintiff to the Committee, he clearly did not act with the requisite level of impartiality; and

- By presenting Defendant Clark's version of the events to the Committee, Defendant Dennis undoubtedly added an improper imprimatur of credibility where none may otherwise have existed. (Cmplt. ¶ 75.)

As noted above, Plaintiff did not waive her rights under the standards required by Rhode Island contract law.

Defendants' repeated references to Plaintiff's acknowledged collaboration (interpreted out of context and set forth in extraneous documents, *see* pp. 6-7, n. 1, *supra*) do not excuse Brown from its duties to provide a fair investigation and hearing; the proceeding could have gone quite differently had Plaintiff known better how to defend herself. Defendants' contention that Plaintiff was required to explain in her Complaint a "plausible reason why she would" want to cross-examine Defendant Clark or T.L. is without merit. Regardless of whether Plaintiff intended to cross-examine the witnesses against her, or her basis for doing so, it is clear from the facts alleged that Defendants acted arbitrarily and in breach of Brown's own self-imposed policy.

### ii.  <u>The Right to Review Charges and Dispute Evidence.</u>

Brown's Code requires "that the person alleging a violation of the Code provide hard copies of the work in question and describe in an accompanying narrative the nature of the alleged violation." Code, p. 10. In the case of an examination, "the person making the charge shall provide copies of the examination in question, indicate specifically the grounds for the charge, and explain his or her process of discovery." Code, pp. 10, 28.

Defendants contend the foregoing provisions apply to the accusing party's responsibilities to the Case Administrator of the Code, and not to Plaintiff as the accused student. (Defendants' Mem. at 20-21). Notably, regardless of whom this provision applies to, Defendants do not allege that this contractual obligation was satisfied. While Defendants assert it would be "immediately apparent to any reasonable person reading the provision….that it is referring to what the person alleging a violation of the Code must provide the Case Administrator," evidently, a reasonable person in Plaintiff's position objectively viewed this requirement as

applying to the student accused. (Defendants' Mem. at 20-21).  Given the Code was issued by Defendant Brown unilaterally, standard contract interpretation principles require that any ambiguities in the contract be construed against the drafter, especially, as here, where the non-drafter was a minor and there was no opportunity for meaningful negotiation of any of the terms. See *Corso v. Creighton University*, 731 F.2d 529, 533 (8th Cir. 1984) (interpreting terms in University handbook by rules of standard contract interpretation; when contract "prepared by one party, and adhered to by another who has little or no bargaining power, ambiguities must be construed against the drafting party.")

Even accepting Defendants' interpretation of the Code's language, this argument has two flaws.  First, even if the contractual duty runs from the party reporting the possible violation to the Case Administrator, the intended third-party beneficiary of that portion of the contract is the respondent, or in this case, the Plaintiff.  See *Davis v. New England Pest Control Co.*, 576 A.2d 1240, 1242 (R.I. 1990) (as intended third-party beneficiary, house purchaser has cause of action against company conducting negligent termite inspection for owner/seller).

Second, when the Case Administrator relies upon the material submitted by the accusing party to file academic dishonesty charges against the student, the student has a right to review that referral file as part of her right to "dispute the evidence against him or her," as set forth in the Code, p. 10.

### iii.  The Right to be Notified of the Exact Charges.

Brown's Academic Code provides "[i]f, after screening, the Case Administrator decides that a formal hearing is warranted, he or she shall, *as soon as possible*, notify the accused student of the specific charge(s) of dishonesty…" brought against her. Code, p. 9. Brown asserts it did not breach this contractual obligation on the grounds that Plaintiff informed the Committee at the

27

Hearing that she understood "there [was] a general concern regarding the whole exam," after meeting with Defendant Dennis. (Defendants' Mem. at 21-22). Defendants once again side step the issue; regardless of whether Plaintiff understood the charges against her, a fact Plaintiff does not concede, Brown was not relieved of its duty to comply with its contractual obligations. In fact, Plaintiff did not find out the exact nature of the charges against her until she appeared before the Committee at the Hearing of December 18, 2013. (Cmplt. ¶¶ 28-29, 129.)

Further, the cases cited by Defendants in support of their arguments are inapposite. There is no disparity between the allegations in the complaint and the exhibits cited by Defendants in support of their motion, as Defendants contend. To the contrary, Defendants overlook the fact that Brown simply failed to comply with its contractual obligations when it failed to notify Plaintiff of the exact charges against her at the time the investigation commenced. It is irrelevant what she understood the charges to be *at the Hearing* itself. Contrary to Defendants' claims, Plaintiff's allegation that Brown did not timely notify Plaintiff of the charges against her is not inconsistent with her statements made at the Hearing. Thus, Defendants breached their obligation to timely notify Plaintiff of the exact nature of the charges against her.

### iv. <u>The right to consult with a Brown Faculty or Administrative Advisor.</u>

Brown expressly covenanted in its Academic Code to provide Plaintiff the opportunity "to consult a Brown faculty or administrative advisor on matters of preparation for the hearing, hearing procedures, and possible outcomes." Code, p. 10. Once again, Defendants attempt to excuse their failure to comply with the Code by shifting the responsibility onto Plaintiff, alleging she was required to express an intention to exercise her contractually provided rights. Significantly, Defendants thus argue, by implication, that they will not abide by any of the provisions outlined in the Code unless the student accused of misconduct explicitly discloses his

or her desire to exercise that right. Contrary to Defendants' allegations, this is not a reasonable or objective interpretation of the contract. In paying the required tuition and fees to Brown, Plaintiff reasonably expected that she would be afforded the rights enumerated in Brown's Academic Code, without question. There is simply nothing either express or implied in the Code that instructs otherwise, as Defendants allege.  Rather, the relevant provision mandates the Case Administrator ***will provide*** the accused student with a list of persons from within the University community…." Code, p. 10.  Brown's obligation is clear and unequivocal.  The University must provide the accused student with this list of faculty and administrative advisors--there is no conditional prerequisite that Plaintiff must demand this list.

Curiously, while Brown's Academic Code does not permit an advisor to attend the academic code hearing with an undergraduate student accused of misconduct, the Code does permit a medical school student accused of academic misconduct to be accompanied by an advisor at the hearing. Code, p. 11. Though a medical school student would presumably be older than an undergraduate student and have more life experience, Brown evidently views a medical school student accused of academic dishonestly as requiring greater guidance. As a finding of academic dishonestly will likewise have a devastating effect on an undergraduate student accused of misconduct, Defendants demonstrated a significant procedural error, in violation of its own policies, when it failed to provide Plaintiff with the requisite list of individuals who could assist and guide her throughout the process.

### d.  Additional contractual violations.

In rejecting Plaintiff's breach of contract claim, Defendants summarily dismiss several violations, focusing exclusively on the four violations outlined by Plaintiff within the corresponding cause of action. Specifically, Defendants committed multiple breaches of its

contract to charge Plaintiff with a violation of the Code including: (1) Brown failed to conduct a fair and impartial investigation, or in actuality, any investigation whatsoever; (2) the investigation and Hearing were slanted against Plaintiff as the student accused; (3) Plaintiff was denied the opportunity to present witnesses or evidence in support of her defense; (4) Brown issued a sanction that was unwarranted and disproportionate in light of the circumstances; (5) Brown's unreasonable delay in providing a decision on Plaintiff's appeal effectively negated any meaningful right to appeal; and (6) Brown negligently misrepresented Plaintiff's eligibility for graduation. (Cmplt. ¶ 8.) Evidently, Defendants overlooked the entirety of the violations painstakingly identified in the Complaint.

Brown's mischaracterization of Plaintiff's well-pleaded allegations of the contract at issue does not control. *See Armstrong Pharm., Inc. v. Micron Technologies, Inc., supra,* 2010 WL 745057, at *2 ("These assertions may, after the parties engage in discovery, turn out to be true, but at this stage of the proceeding they are simply defendant's characterization of disputed facts and thus beyond the scope of a motion to dismiss."); *see also Gaston v. Terronez,* No. 1:08-CV-01629-SKO, 2010 WL 2991180, at *3 (E.D. Cal. July 28, 2010) (Plaintiff's complaint cannot be read in a manner that is consistent with Defendant's characterization of the facts and the Court cannot look beyond Plaintiff's complaint to resolve the motion to dismiss.") As Plaintiff accepted the terms of the contract by her full payment of tens of thousands of dollars of tuition and fees, Brown was required to abide by its stated procedures.

Based on the foregoing, Plaintiff has indisputably asserted a viable claim against Defendants for numerous breaches of their contractual obligations pursuant to the Code. Significantly, Defendants do not refute that they failed to comply with any of the enumerated obligations. Rather, Defendants mischaracterize the facts and impose an arbitrary retroactive

right upon Plaintiff in an effort to shift responsibility and distract the Court from the clear fact that Defendants repeatedly breached their contract with Plaintiff. Defendants denied Plaintiff a basic level of fundamental fairness throughout the disciplinary process. To this end, Defendants acted arbitrarily and capriciously and judicial review of the subject process is warranted.

### III.

### THE COMPLAINT STATES A CAUSE OF ACTION FOR BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

"Under Rhode Island law, contracts contain an implied duty of good faith and fair dealing." *Mangla, supra,* 135 F.3d at 84. "The implication of the duty is that the parties will act in a manner consistent with the purposes of the contract." *Lifespan Physicians Professional Services Org., Inc. v. Combined Insurance Co. of America,* 345 F. Supp. 2d 214, 225 (D.R.I. 2004). A determination of whether a party breached its implied covenant of good faith and fair dealing requires a determination of the underlying objectives of the contract, which often is a question of disputed fact. This Court explained the standard governing this cause of action in *T.G. Plastics Trading Co. Inc. v. Toray Plastics (America), Inc.,* 958 F.Supp.2d 315, 326-27 (D.R.I. 2013) as follows:

> The core question is whether a party's conduct is free from unreasonable or arbitrary conduct in determining if that party breached the covenant of good faith and fair dealing. *See, Ross–Simons of Warwick, Inc. v. Baccarat, Inc.,* 66 F.Supp.2d 317, 329 (D.R.I. 1999). "[A] party's actions must be viewed against the backdrop of contractual objectives in order to determine whether those actions were done in good faith." *Hord Corp. v. Polymer Research Corp. of Am.,* 275 F.Supp.2d 229, 238 (D.R.I. 2003). When the contractual objectives are at the center of the dispute, then there is a genuine issue of material fact and summary judgment is inappropriate. *See, Lifespan/Physicians Prof'l Servs. Org., Inc. v. Combined Ins. Co. of Am.,* 345 F.Supp.2d 214, 225 (D.R.I. 2004).

Further, the Restatement (Second) of Contracts notes that every contract imposes on each party a duty of good faith and fair dealing in its performance and enforcement. *See Restatement*

(Second) of Contracts § 205 (1981); see also Normandin v. Gauthier, No. C.A. 03-6211, 2006 WL 1073422, at *8 (R.I. Super. 2006) (every contract carries an implied covenant of good faith and fair dealing requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement).

Defendants erroneously cite to the standard required to establish a Fourteenth Amendment due process violation in support of their claims that the Complaint fails to plead a breach of the covenant of good faith and fair dealing. (Defendants' Mem. at 26-28).  Defendants are incorrect in asserting that Plaintiff must demonstrate the disciplinary decision was motivated by bad faith or ill will, constituting egregious official conduct or an abuse of power that shocks the conscience. Rather, in determining whether a party has breached the implied covenant of good faith and fair dealing, the Court must decide "whether or not the actions in question are free from arbitrary or unreasonable conduct." Ross–Simons of Warwick, Inc. v. Baccarat, Inc., 66 F.Supp.2d 317, 329 (D.R.I.1999), aff'd, 217 F.3d 8 (1st Cir.2000).

Plaintiff has sufficiently alleged that Brown breached the covenant of good faith and fair dealing by not faithfully discharging its duties under the parties' contract, including the specific provisions outlined in Section II, supra. (Cmplt. ¶¶ 30-31.) The objectives of the parties' contracts contemplate that a student accused of academic dishonesty will have a full and fair opportunity to defend herself, to be notified of the exact charges against her, to consult with a faculty or administrative advisor, to present relevant evidence, call relevant witnesses, and have her version of the incident heard. Plaintiff was deprived of these rights due to Brown's numerous violations of the Academic Code, which were made in bad faith and based on Brown's failure to abide by its own stated policies.

Plaintiff's claims under this count are not limited to the contract-based claims tied to specific provisions of the Code.   Additionally, Plaintiff claims that Brown's administrators violated the spirit of the Code by placing upon her the burden of proving her innocence, and treating her with disdain and disrespect. In creating an atmosphere of unfairness beyond the specific due process protections in the Code, Brown violated the implied covenant of good faith and fair dealing under Rhode Island's law of contract.

**IV.**

**THE COMPLAINT STATES A CAUSE OF ACTION FOR
PROMISSORY ESTOPPEL**

Defendants contend that Plaintiff failed to plead a cause of action for promissory estoppel on the grounds that Brown has not contested the validity of the contract between Brown and Plaintiff. (Defendants' Mem. at 28-29). Defendants' theory is misplaced, as it presupposes that promissory estoppel does not apply whenever an enforceable contract *exists*. In fact, this Court has recognized that it is permissible, and customary practice, to plead alternative theories of recovery. *See Hasbro, Inc. v. Mikohn Gaming Corp.*, No. CIV.A. 05-106 S, 2006 WL 2035501, at *9 (D.R.I. July 18, 2006) ("[t]he Federal Rules of Civil Procedure permit a party to "set forth two or more statements of a claim or defense alternately or hypothetically, either in one count or defense or in separate counts or defenses." Fed.R.Civ.P. 8(e)(2). When pleading in the alternative, a party may even state inconsistent claims"); *see also Fleet v. Bank of Am. N.A.*, 229 Cal. App. 4th 1403, 1413, 178 Cal. Rptr. 3d 18, 27 (4th Dist. 2014) ("[a]lthough a cause of action for promissory estoppel is inconsistent with a cause of action for breach of contract based on the same facts…"[w]hen a pleader is in doubt about what actually occurred or what can be established by the evidence, the modern practice allows that party to plead in the alternative and make inconsistent allegations"); *Atl. Paper Box Co. v. Whitman's Chocolates*, 844 F. Supp. 1038,

33

1043 (E.D. Pa. 1994) ("Just as courts have allowed plaintiffs to pursue alternative theories of recovery based on both breach of contract and unjust enrichment even when the existence of a valid contract would preclude recovery under unjust enrichment, plaintiff may presently state claims based on promissory estoppel…").

Accordingly, absent a determination that Defendants breached an enforceable contract between Brown and Plaintiff, Plaintiff has sufficiently pleaded the elements of promissory estoppel in the alternative.  A cause of action for promissory estoppel is stated where there is: (1) a clear and unambiguous promise; (2) reasonable and justifiable reliance upon the promise; and (3) detriment to the promisee, caused by his or her reliance on the promise. *Filippi v. Filippi,* 818 A.2d 608, 625-26 (R.I. 2003).

Contrary to Brown's short shrift to the allegations in the Complaint, Plaintiff does identify a clear and unambiguous promise, that Plaintiff reasonably and justifiably relied on that promise by accepting admission to Brown and paying the required tuition and fees, and the substantial detriment resulting to Plaintiff as a result of this reliance. (Cmplt. ¶¶ 26 and 149-154.) In addition to the statements made by the Women's Tennis coach, the only promises referenced by Defendants, Plaintiff has also alleged that Defendants' conduct throughout the entire investigation process was inconsistent with Brown's initial recruiting assurances *as well as* the representations and promises made within the Code. (Cmplt. ¶¶ 152-153.) Thus, not only did Plaintiff rely on the assurances made during her recruitment, but she also reasonably and justifiably relied upon Brown's express and implied promises and representations enumerated in the Code to her detriment. (Cmplt. ¶154.) Consequently, Plaintiff suffered tremendous damages, including, without limitation, emotional distress, loss of educational and career opportunities,

economic injuries, reputational harm, loss of athletic opportunities and other direct and consequential damages.

## V.

### THE COMPLAINT STATES A CAUSE OF ACTION FOR NEGLIGENCE

To state a cause of action for negligence in Rhode Island, "plaintiff must establish a legally cognizable duty owed by a defendant to a plaintiff," in addition to a breach of that duty, injury, and a causal link between the breach and the injury. *Willis v. Omar*, 954 A.2d 126, 129 (R.I. 2008) (quoting *Mills v. State Sales, Inc.*, 824 A.2d 461, 467 (R.I. 2003)).

The imposition of duty presents a question of law for the courts, and the court must base its decision on the facts of the case, either as undisputed by the parties or as decided by a jury. *Sullo v. Greenberg*, 68 A.3d 404, 408 (R.I. 2013). The Court should consider "all relevant factors, including the relationship of the parties, the scope and burden of the obligation to be imposed upon the defendant, public policy considerations, and notions of fairness." *Volpe v. Gallagher*, 821 A.2d 699, 705 (R.I. 2003), *citing Hennessey v. Pyne*, 694 A.2d 691, 697 (R.I. 1997). Where the risk of injury to a party is reasonably foreseeable, the law imposes a duty upon the defendant to take reasonable steps to avoid that injury. *Liu v. Striuli*, 36 F. Supp. 2d 452 (D.R.I. 1999). The imposition of duty presents a question of law for the courts. *See Wyso v. Full Moon Tide, LLC*, 78 A.3d 747, 750 (R.I. 2013). Thus, the Court may find here that Brown is required to take reasonable care in both composing and implementing a conduct process, and that failure to do so makes for a breach of the duty of reasonable care.

For instance, in *Doe v. Univ. of the South*, 2011 WL 1258104 (E.D. Tenn. 2011), a male student was wrongly accused and found responsible of sexually assaulting a female student and expediently forced out of the institution following several missteps during the conduct process.

The District Court held that a jury could find that the University must take reasonable care in both composing and implementing a conduct process, and that failure to do so makes for a breach of the duty of reasonable care.

The cases on which Defendants rely in support of their proposition that they did not owe any duty to Plaintiff are distinguishable. Here, Brown owed a duty of care to Plaintiff beyond the confines of any duty imposed by the Code. By virtue of the school-student relationship, Defendants owed a duty of care to Plaintiff to conduct any disciplinary proceedings in a fair and impartial manner. *See* Restatement (2d) of Torts § 302 *comment a* (1965) ("[a]nyone who does an affirmative act is under a duty to others to exercise the care of a reasonable man to protect them against an unreasonable risk of harm to them arising out of the act"); *see also Doe v. Bd. of Educ. of Prince George's Cnty.*, 888 F. Supp. 2d 659, 669 (D. Md. 2012) ("[a]lthough there is generally no duty to protect others from third parties' conduct, such a duty may arise in the presence of a special relationship"); *Stephen Jay Photography, Ltd. v. Olan Mills, Inc.*, 903 F.2d 988, 993 (4th Cir.1990) (noting that "schools and the students enjoy a special relationship of trust").

Thus, Brown breached a duty owed to Plaintiff that was separate and distinct from the duties imposed on Brown by the Academic Code. Contrary to Defendants' allegations, Plaintiff is not asking the Court to either inject itself into the academic decision making of the university or to create a new cause of action in the State of Rhode Island. Rather, where an academic institution exercises its discretion arbitrarily or irrationally, such as here, judicial intervention is warranted. *See, e.g., Matter of Sofair v. State Univ. of N. Y. Upstate Med. Center Coll. of Medicine*, 54 A.D.2d 287, 290, 388 N.Y.S.2d 453 (4th Dept. 1976), *rev'd. on other grds*. 44 N.Y.2d 475, 406 N.Y.S.2d 276, 377 N.E.2d 730 (1978).

The standard of care owed to Plaintiff is informed not only by the Code, but also by the relevant case law, custom, and practice in the industry and regulations. *Michalopoulos v. C&D Restaurant*, 764 A.2d 121 (R.I. 2001) (restaurant owner's failure to comply with building code is evidence of negligence in action brought by plaintiff who slips on the steps); *Rossi v. Ronci*, 63 R.I. 250, 7 A.2d 773 (1939) (in a negligence action, based on statutory violations, resulting in injury to a minor under the age of sixteen years, evidence of such injury, of which the violation of this statute was a proximate cause, is prima facie evidence of liability); *Oates v. Union Railway Co.*, 27 R.I. 499, 63 A. 675 (1906) (statutes and ordinances may be used to inform what constitutes a reasonable standard of care in a given situation to the extent they were created to protect the complainant).  It follows that, beyond the duties imposed on Defendants by the Code, Brown owes a duty of care to Plaintiff to conduct its disciplinary proceedings in a reasonable manner, without a prejudicial and haphazard application of the rights and responsibilities under the Code with respect to Plaintiff.

Notwithstanding, Brown repeatedly breached its duty of care owed to Plaintiff. Specifically, Brown breached its duty to Plaintiff as follows: by failing to conduct a thorough and impartial investigation; by accepting at face value Defendant Clark's allegations despite the lack of any corroborating evidence; by engaging in an adjudication biased against Plaintiff; by denying Plaintiff the opportunity to present witnesses or evidence in support of her defense; and by assessing a sanction that was unwarranted and disproportionate in light of the circumstances.

Based on the foregoing, Defendants were negligent in that they repeatedly breached the duty of care owed to Plaintiff throughout the investigative process.

## VI.

## THE COMPLAINT STATES A CAUSE OF ACTION FOR NEGLIGENT AND/OR INTENTIONAL MISREPRESENTATION

To make out a prima facie case for the tort of negligent misrepresentation in Rhode Island, the plaintiff must establish the following elements: 1) a misrepresentation of a material fact; 2) the party making the representation must do so without knowledge as to its truth or falsity, or must do so under circumstances in which he or she should have known of its falsity; 3) the party making the representation must intend to induce another to act upon it; and 4) an injury must result to the party acting in justifiable reliance on the misrepresentation. *See Lifespan/Physicians Prof'l Servs. Org., Inc. v. Combined Ins. Co. of Am., supra,* 345 F. Supp. 2d at 226. There is no requirement, and Defendants have not cited to any applicable case law, demanding that Plaintiff articulate an actual monetary loss in order to recover on her claims. *See also Wilby v. Savoie,* 86 A.3d 362, 373 (R.I. 2014) (similar elements for a claim of intentional misrepresentation, or deceit). In fact, other courts have permitted plaintiffs to recover damages regardless of the level of specificity in the prayer for relief. *See Styczinski v. Westminster Mint, Inc.,* 2014 WL 6388738, at *6 (D. Minn. Nov. 14, 2014) ("Plaintiff's failure to include an exact dollar figure as to damages suffered is not grounds for dismissal of the request for monetary relief"); *Weyerhaeuser Co. v. Domtar Cor*p., 61 F. Supp. 3d 445, 453 (D. Del. 2014) (Plaintiff need not allege an exact monetary figure in order to sufficiently plead that it suffered damages from the breach of contract"); *Holt Civic Club v. City of Tuscaloosa,* 439 U.S. 60, 65, 99 S.Ct. 383, 58 L.Ed.2d 292 (1978) (determining that a party's omission of a prayer for relief in the pleadings is not a barrier to redress in an otherwise meritorious claim). While Rhode Island's courts have not decided the issue, Plaintiff maintains that the better rule is for parties who prove deceit and/or negligent misrepresentation are entitled to damages for emotional

distress and/or mental anguish where, as here, it was foreseeable that defendants' misrepresentations would cause such distress or anguish, such as derailing a college senior's career plans at a time of pre-existing anxiety. *See, e.g., Kilduff v. Adams, Inc.*, 219 Conn. 314, 593 A.2d 478 (1991); *Dillard's Dept. Stores, Inc. v. Strom*, 869 S.W.2d 654 (Tex. Ct. App. 1994).

Notwithstanding, Defendants contend Plaintiff fails to plead a claim for negligent misrepresentation on the grounds that the Complaint does not specify the exact amount of monetary damages claimed. (Defendants' Mem. at 36.) While Defendants occupy several paragraphs discussing the type of damages recoverable for a negligent misrepresentation claim (pecuniary loss only), the Complaint in fact specifically identifies "loss of educational and career opportunities" and "economic damages" within Plaintiff's claims for relief, which are unquestionably pecuniary in nature. *See* Complaint at ¶¶ 137, 146, 156, 161, 169, 178, 184, 189, 194, 200, 205, 210 and 217.

Further, Plaintiff has adequately alleged that Defendants made material misrepresentations of fact, including that: Plaintiff's transfer courses allegedly would not cover her outstanding credits required for graduation from Brown; Plaintiff allegedly failed to earn the requisite number of enrollment units to timely graduate; and Plaintiff would not be graduating in the spring of 2014. (Cmplt. ¶¶ 164-165.) The foregoing were material misrepresentations in that they prevented Plaintiff from timely enrolling in all graduation week activities and from receiving the employment opportunities and related support and services typically afforded to graduating seniors, one of Plaintiff's primary considerations in accepting admission to Brown University. (Cmplt. ¶ 166.) Brown knew that Plaintiff would act in reliance on these misrepresentations, and Plaintiff did in fact justifiably and reasonably rely on Brown's

misrepresentations to her detriment. (Cmplt. ¶¶ 167-168.) The foregoing misrepresentations were designed purely to further harass and punish Plaintiff for the academic misconduct of which she was falsely accused.

Consequently, Plaintiff has sufficiently pleaded a claim for negligent misrepresentation and Defendants' motion to dismiss this cause of action must be denied.

## VII.

## THE COMPLAINT STATES A CAUSE OF ACTION FOR UNREASONABLE PUBLICITY TO ONE'S PRIVATE LIFE

Pursuant to Rhode Island General Law Section 9–1–28.1(a)(3), an individual is guaranteed "[t]he right to be secure from unreasonable publicity to one's private life." R.I. Gen. Laws § 9–1–28.1(a)(3). To establish that a fact is "private," a plaintiff is required to "demonstrate that [she] actually expected a disclosed fact to remain private, and that society would recognize this expectation of privacy as reasonable and be willing to respect it." _Lamarque v. Centreville Sav. Bank_, 22 A.3d 1136, 1140 (R.I. 2011); _quoting Swerdlick v. Koch_, 721 A.2d 849, 858 (R.I. 1998). Put another way, "a privacy claim must be 'bona fide and of a type that a reasonable person would expect to be observed.'" _Swerdlick v. Koch, id._, (_quoting Pontbriand v. Sundlun_, 699 A.2d 856, 865 (R.I. 1997)); _see also Lisnoff v. Stein_, 925 F. Supp. 2d 233, 240-41 (D.R.I. 2013).

Defendants submit that Plaintiff has not presented a viable claim for unreasonable publicity to one's private life solely because the allegations are made "upon information and belief." (Defendants' Mem. at 37.) Defendants erroneously contend, first, because the information alleged "upon information and belief" is not solely in the control of Defendants', but is also in the control of witness T.L., this allegation is insufficient to satisfy Rule 12(b)(6); and second, that a person can only suffer injury and damage for publication of a private fact when

they are aware that a private fact has been published to a third party. Notably, Defendants cannot cite to a single source in support of either claim, and their conclusions are misguided. (Defendants' Mem. at 37-38.)

Magistrate Judge Sullivan described the Court's review of "information and belief" pleading when faced with a motion to dismiss as follows:

> The cases are uniform in holding that "information and belief" allegations are permissible at the pleading stage, particularly in employment cases, where "some latitude may be appropriate in applying the plausibility standard" where "a material part of the information needed is likely to be within the defendant's control."

*Reilly v. Cox Enterprises, Inc.*, 2014 WL 4473772 at *9-10 (D.R.I. 2014); *see also* 1993 Advisory Committee note to Fed.R.Civ.P. 11(b) (information and belief pleading is a "permissible way to indicate a factual connection that a plaintiff reasonably believes is true but for which the plaintiff may need discovery to gather and confirm its evidentiary basis."); *see also* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1224 (3d ed.) ("allegations in this form have been held to be permissible, even after the *Twombly* and *Iqbal* decisions."); *Arista Records, LLC v. Doe*, 604 F.3d 110, 120 (2d Cir.2010) ("The *Twombly* plausibility standard ... does not prevent a plaintiff from "pleading facts 'alleged upon information and belief' " where the facts are peculiarly within the possession or control of the defendant ... ***or where the belief is based on factual information that makes the inference of culpability plausible***...." (emphasis added, *quoting Boykin v. KeyCorp*, 521 F.3d 202, 215 (2d Cir.2008)); *Century Metal Recycling Private Ltd. v. Metal Worldwide, Inc.,* 2013 WL 4851696, at *7, n. 13 (D.Md. Sept. 10, 2013) (citing to the 1993 Advisory Committee Note to Rule 11(b)); *Simonian v. Blistex, Inc.*, 2010 WL 4539450, at *3 (N.D.Ill. Nov. 3, 2010) ("[N]othing in either *Twombly* or *Iqbal* suggests that pleading upon 'information and belief' is necessarily deficient");

see _Doe v. Salisbury Univ._, No. CIV. JKB-15-517, 2015 WL 5005811, at *15 (D. Md. Aug. 21, 2015).

Here, Plaintiff has adequately pleaded facts to establish a claim for unreasonable publicity to one's private life, notwithstanding that such allegations are made "upon information and belief." Certainly, Plaintiff should be entitled to engage in discovery to verify that Brown disclosed to third parties the aforementioned private facts about Plaintiff. Yet, even if this information was not peculiarly within the possession or control of Brown, as Defendants suggest, the allegations are nonetheless based on factual information that makes the inference of culpability plausible: T.L. was charged with the same offense in violation of the Code, stemming from her collaboration with Plaintiff on the Exam; T.L.'s hearing took place immediately before Plaintiff's Hearing, and before the same Committee members; Brown did not require, or take any steps to ensure, that T.L. was present for Plaintiff's Hearing; and T.L. was given the opportunity to establish her credibility and present her version of the events to the Committee prior to Plaintiff. (Cmplt. ¶ 78.) Thus, not only are the facts at issue within the possession of Defendants, but the allegations are also based on factual information that makes the inference of culpability against Defendants plausible. To this end, given what is actually alleged, this claim for relief easily passes muster under _Twombly_, _supra_, 550 U.S. 544 (2007), and _Aschcroft v. Iqbal_, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

Moreover, there is no basis for Defendants' claims that a complaint sufficiently pleads a cause of action for unreasonable publicity only when the plaintiff _is aware_ that the private fact has been published to a third party. Defendants have not cited to any case law or the applicable statute in support of this fabricated element of knowledge. Notwithstanding, even if the Court were to entertain this additional element of the claimed violation, Plaintiff sufficiently alleges in

the Complaint, upon information and belief, that Brown disclosed information about Plaintiff's

academic status, academic record and eligibility for graduation to at least one other student, T.L.

(Cmplt. ¶ 176.)

Accordingly, Plaintiff has plausibly alleged a cause of action for unreasonable publicity

to one's private life, in violation of R.I. Gen. Laws § 9–1–28.1(a)(3).

## VIII.

## PLAINTIFF WITHDRAWS HER CLAIM FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

Upon reviewing Defendants' argument, Plaintiff agrees that the Complaint does not state

a claim for negligent infliction of emotional distress under Rhode Island law and hereby

withdraws that claim.

## IX.

## THE COMPLAINT STATES A CAUSE OF ACTION FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

To make out a prima facie case for the tort of intentional infliction of emotional distress

in Rhode Island, the plaintiff must establish extreme and outrageous conduct that intentionally or

recklessly resulted in causing her severe emotional distress, as well physical symptomology

resulting from the alleged improper conduct. *See Lisnoff v. Stein*, *supra,* 925 F. Supp. 2d at 241;

*Andrade v. Jamestown Housing Auth.*, 82 F.3d 1179, 1187 (1st Cir.1996) (noting that the cause

of action is patterned after § 46 of the Restatement (Second) of Torts (1965)). Courts have

recognized that mental anguish and insomnia, among other symptoms, are sufficient to

demonstrate the requisite level of severe emotional distress. *See DeJean v. FedEx Ground*

*Package Sys Inc.*, No. CV 13-06194 BRO EX, 2013 WL 5798548, at *5 (C.D. Cal. Oct. 25,

2013) ("Plaintiff alleges he has suffered "embarrassment, anxiety, humiliation, serious mental

anguish, and emotional and physical distress." (Compl. at ¶ 97.) Thus, the Court cannot say that there is no possibility that Plaintiff could prevail in demonstrating that he suffered severe emotional distress").

Defendants summarily dismiss the entirety of Plaintiff's claimed damages, focusing exclusively on insomnia as an invalid symptom, on its own, to support a claim for emotional distress. However, the Complaint identifies the following in support of Plaintiff's claim: "emotional distress, which manifested itself through mental anguish and physical symptoms *including* insomnia." (Cmplt. ¶¶ 183, 188, 193, 199, 204, 209.) Taking all allegations in the Complaint as true, Plaintiff has alleged distress that could plausibly be deemed severe enough to give rise to liability against Defendants. *See Ciolino v. Eastman*, No. 13-CV-13300-ADB, 2015 WL 5163046, at *9 (D. Mass. Sept. 3, 2015) ("whether Plaintiffs' alleged distress was "severe" enough to give rise to liability is a question that should be resolved by a jury").

Moreover, Plaintiff has plausibly alleged a claim for intentional infliction of emotional distress pursuant to the pleading requirements of Federal Rule of Civil Procedure 8(a)(2), which requires that the complaint "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Twombly, supra,* 550 U.S. at 555; *see Iqbal, supra,* 556 U.S. at 680 (complaint must nudge claims from conceivable to plausible). *See also Slay v. Bank of Am. Corp.*, No. CA 10-408 ML, 2011 WL 1045629, at *9 (D.R.I. Mar. 9, 2011) ("*Twombly* cautioned against thinking of plausibility as a standard of likely success on the merits; the standard is plausibility assuming the pleaded facts to be true and read in a plaintiff's favor"), *report and recommendation adopted*, No. CA 10-408 ML, 2011 WL 938309 (D.R.I. Mar. 16, 2011), *citing Sepúlveda–Villarini, supra,* 628 F.3d at 30. Plaintiff has sufficiently pleaded factual allegations that demonstrate the wrongful actions employed by Defendants and the resultant forms of

emotional distress. Accordingly, the Complaint contains "enough detail to provide a defendant with fair notice of what the…claim is and the grounds upon which it rests," thus satisfying the pleading requirements of Rule 8(a)(2). *Morales v. Chadbourne*, *supra,* 996 F. Supp. 2d at 26-27 (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007)).

In attempting to refute Plaintiff's allegations, Defendants draw conclusory assertions, again unsupported by any case law, that "if punitive damages are disfavored in the law, then claims for intentional infliction of emotional distress are more disfavored." (Defendants' Mem. at 41-42.) This curious comparison between the conduct at issue and the standard utilized in determining an award of punitive damages is unpersuasive. Taking all the allegations of the Complaint as true, Plaintiff pleads plausible facts that could be deemed sufficient to satisfy the element of extreme and outrageous conduct: Brown intentionally failed to provide Plaintiff the protections afforded by its Code, failed to thoroughly investigate the allegations against Plaintiff, and failed to treat Plaintiff in a manner that was commensurate with its treatment of other students against whom similar allegations have been made. (Cmplt. ¶ 181.) Defendant Clark singled out Plaintiff from the 200 students enrolled in Public Health 320 who may have collaborated on the Exam. (Cmplt. ¶¶ 187, 203.) Defendant Dennis falsely advised Plaintiff of the charges against her, failed to act as an impartial and unbiased facilitator, and falsely assured Plaintiff that the Committee members would view the facts with a clean slate. (Cmplt. ¶ 77.) Based on the foregoing, Plaintiff has plausibly alleged that Defendants intentionally and recklessly acted in an extreme and outrageous manner that had the likelihood of causing emotional distress to Plaintiff, sufficient to withstand Defendants' motion to dismiss.

## X.

### THE COMPLAINT STATES A CAUSE OF ACTION FOR TORTIOUS INTERFERENCE WITH CONTRACT

Rhode Island law requires a plaintiff to establish the following elements for a tortious interference claim: (1) the existence of a contract; (2) the alleged wrongdoer's knowledge of the contract; (3) his intentional interference; and (4) damages resulting therefrom. *See New England Multi-Unit Hous. Laundry Ass'n v. Rhode Island Hous. & Mortgage Fin. Corp.*, 893 F. Supp. 1180, 1192 (D.R.I. 1995). Defendants argue that Brown (acting through its employees) cannot be held liable for tortiously interfering with its own contract with Plaintiff. However, Brown's employees can be personally liable for such interference if they act beyond the scope of their authority, act maliciously, or act in their own interests.

For example, in *Jolicoeur Furniture Co. v. Baldelli*, 653 A.2d 740, 752 (R.I. 1995), the Rhode Island Supreme Court acknowledged that generally, "tort liability may be imposed upon a defendant who intentionally and improperly interferes with the plaintiff's rights under a contract with *another person* if the interference causes the plaintiff to lose a right under the contract or makes the contract rights more costly or less valuable." (Emphasis added.) W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 129 at 978 (5th ed. 1984). In *Jolicoeur,* the Plaintiff alleged the city's mayor and planning director were liable for tortious interference with a contract for the sale of city land. The Court found a legally binding contract existed, and the city's mayor and planning director acted tortiously to frustrate that agreement. Further, "[b]ecause their actions were not justified and constituted legal malice toward plaintiffs, their conditional privilege to act as agents of the city was destroyed." *Jolicoeur Furniture Co. v. Baldelli*, *supra*, 653 A.2d at 753. *See also Bradbury v. Network Enterprises, Inc.,* 2013 WL 587884, at *4 (E.D. Mo. Feb. 13, 2013).

Thus, the conditional privilege afforded to an agent or employee is destroyed when the individual acts with a wrongful motive. *See* Lorenz v. Dreske, 62 Wis. 2d 273, 286-87, 214 N.W.2d 753, 760 (1974) ("[a]n agent is not relieved from liability by the fact that he is acting on account of his principal, except where he is exercising a privilege of the principal or where he himself has a privilege to act for the benefit and protection of the principal. If a director or managing officer acting bona fide procures, causes or participates in authorizing a breach of contract between his company and a third person, he may well be regarded as protected only by a conditional privilege, which will be destroyed by a wrongful motive"); *see also* Roy v. Woonsocket Inst. for Savings, 525 A.2d 915 (R.I.1987) (considering a claim by a terminated employee that his immediate supervisor had tortiously interfered with the employee's employment contract); Robertson Stephens, Inc. v. Chubb Corp., 473 F.Supp.2d 265, 275–76 (D.R.I.2007) (denying a motion to dismiss because complaint adequately alleged that defendant, agent of the contracting party, acted in its own personal interests *rather than* the interest of the contracting party); W. Mass. Blasting Corp. v. Metro. & Cas. Ins. Co., 783 A.2d 398, 403 (R.I. 2001).

Similarly, in the present case, Defendant Klawunn waived her conditional privilege when she acted out of malice in imposing an unreasonable and arbitrary sanction on Plaintiff. Specifically, the following actions and inactions of Defendant Klawunn demonstrated significant errors in Defendant Brown's disciplinary procedures:

- In issuing her Appeal Decision, Defendant Klawunn accepted Defendant Clark's claims as more credible than Plaintiff's, despite the lack of any corroborating evidence for Defendant Clark's three alleged instances of oral instruction, or a detailed review of *every other exam* in the class. In fact, the evidence on which Defendant Klawunn seemingly relied in reaching her decision was never presented at the Hearing, or at any other time, further evidencing the illogical and arbitrary procedures employed by Defendants in this matter. (Cmplt. ¶ 83.)

- Defendant Klawunn's written decision is emblematic of Brown's failure to properly investigate, understand and punish the collaboration between Plaintiff and T.L. Plaintiff was disciplined on the grounds that Defendant Clark purportedly communicated to her class that collaboration was prohibited on the Exam. Yet, Defendant Klawunn's Appeal Decision directly refutes Defendant Clark's allegation. Specifically, the Appeal Decision suggested that while some level of collaboration *was* allowed, Plaintiff's degree of collaboration just happened to exceed the allowable limit. Thus, the inconsistency between Defendant Clark's allegation (that collaboration was wholly prohibited) and Defendant Klawunn's finding (that collaboration was permitted to some degree) demonstrates the arbitrary and capricious nature of Defendant Brown's Decision. (Cmplt. ¶ 84.)

- Upon information and belief, neither Defendant Brown nor Defendant Klawunn reviewed all 200 exams to determine "the extent of shared work" contained in Plaintiff's Exam. Notably, in the Appeal Decision, Defendant Klawunn does not provide any guidance as to what degree was allowed on the Exam, leaving Plaintiff to surmise as to how Brown determined that the level of collaboration observed on her Exam only was impermissible. Thus, Brown arbitrarily imposed sanctions upon Plaintiff based on a vague and unspecified level of "shared work." (Cmplt. ¶ 85.)

- Notwithstanding Plaintiff's need to enroll for the upcoming spring semester, Defendant Klawunn responded to Plaintiff by email on January 14, 2014, stating she hoped to have a decision on the appeal no later than February 28, 2014. (Cmplt. ¶ 98.)

- Ironically, Defendant Klawunn ultimately issued the Appeal Decision on January 23, 2014, *one day* after the start of the spring 2014 semester. As the spring semester had already commenced, the Appeal itself was futile in that it could never have reversed the punishment meted out by Brown. (Cmpt. ¶ 100.)

Defendants cannot reasonably assert that the foregoing failures were undertaken in the best interests of Defendant Brown. As Defendant Klawunn intentionally interfered with the contractual relationship between Defendant Brown and Plaintiff, and without any legally recognized privilege or justification, Plaintiff has stated a viable claim for tortious interference with contract against Defendant Klawunn.

**XI.**

**BECAUSE DEFENDANTS EFFECTIVELY MOVED FOR SUMMARY JUDGMENT
WITHOUT FIRST ALLOWING DISCOVERY,
THE COURT SHOULD DENY BROWN'S RULE 12 MOTION AS MOOT
AND DENY DEFENDANTS' SUMMARY JUDGMENT AS PREMATURE.**

As noted above, Defendants' inclusion of four exhibits undermines the validity of its

motion within the context of a Rule 12(b)(6) motion for failure to state a claim.  For example,

Defendants argue at pp. 21-22 of their Motion to Dismiss that Plaintiff's statements in Exhibit 1

contradict the Complaint's allegations, and therefore create an amendment of the Complaint to

support dismissal.  In fact, however, Plaintiff's statements in Exhibit 1 cannot be read in isolation

as an admission of violations, because: (1) the conduct she acknowledges (such as failing to cite

the author of a passage presented in the exam) is hardly plagiarism; (2) her "admissions"

implicate multiple other students which challenges the integrity of the charges against her; and

(3) she only acknowledged these things because she did not believe Brown was going to punish

her for them.

More generally, before the Court converts a Rule 12(b)(6) motion to one for summary

judgment, it must allow all parties "a reasonable opportunity to present all the material that is

pertinent to the motion."  Fed.R.Civ.P. 12(d); *see Clorox Co. Puerto Rico v. Proctor & Gamble

Commercial Co.*, 228 F.3d 24, 32 (1st Cir. 2000). As a result, the Court should not dismiss this

case on the pleadings, but instead should allow it to proceed through discovery before

considering all (or at least the bulk of) Defendants' arguments.  In the case at bar, Plaintiff is not

able to respond adequately to a motion for summary judgment because she has not had the

opportunity to conduct an adequate investigation through discovery.  *See* Fed.R.Civ.P. 56(d);

Exhibit A (Rule 56(d) Declaration of Tara J. Novack, Esq.). When a party moving to dismiss

under Rule 12(b)(6) has, through the introduction of extraneous materials, instead brought a

motion for summary judgment, the court should deny the motion without prejudice as being premature.  *Cordell v. Howard*, 879 F.Supp. 2d 145, 157 (D.Mass. 2012). *See LaRoche v. State*, No. C.A. WM 97-0088, 1997 WL 1526515, at *3 (R.I. Super. May 21, 1997) ("[t]he Rules of Civil Procedure permit the Court to treat 12(b)(6) motions as motions for summary judgment when matters outside the pleadings are presented to the Court"); *City of Warwick v. Laborers' Int'l Union of N. Am.*, No. CIV.A. 08-366ML, 2009 WL 462690, at *2 (D.R.I. Feb. 23, 2009).

## XII.

## ALTERNATIVELY, LEAVE TO AMEND IS WARRANTED

Notwithstanding the foregoing, should the Court determine that Plaintiff's claims were not adequately pleaded, Plaintiff hereby requests leave to amend the Complaint.  Fed. R. Civ. P. 15(a); *Local 850, Int'l Ass'n of Firefighters, AFL-CIO v. Pakey*, 107 R.I. 124, 127, 265 A.2d 730, 731 (1970) ("When a complaint is dismissed for failure to state a claim upon which relief can be granted, the dismissal should be accompanied with a grant of leave to amend, unless it appears to a high degree of certainty that amendment would be unavailing."); *O'Neil v. Q.L.C.R.I., Inc.*, 750 F. Supp. 551, 553 (D.R.I. 1990) ("If there is no prejudice, leave to amend in most cases should be granted.")

Based on the foregoing, and given the potential long-term professional and educational implications at stake, the Court should exercise its discretion to grant Plaintiff leave to amend her Complaint.

## **CONCLUSION**

Based on the foregoing, Defendants' Motion to Dismiss should be denied in its entirety and the Court should order such further and other relief as deemed just and proper.

**Dated: November 13, 2015**

**Respectfully submitted,**

**NESENOFF & MILTENBERG, LLP**
*Attorneys for Plaintiff Jane Doe*

**By: /s/ Andrew T. Miltenberg_____**
**Andrew T. Miltenberg, Esq. (*pro hac vice*)**
**Tara J. Novack, Esq. (*pro hac vice*)**
**363 Seventh Avenue, Fifth Floor**
**New York, New York 10001**
**(212) 736-4500**
**amiltenberg@nmllplaw.com**
**tnovack@nmllplaw.com**

        **-and-**

*local counsel for Plaintiff Jane Doe,*

**By: /s/ Samuel D. Zurier_____**
**Samuel D. Zurier, Esq. (Bar No. 3576)**
**55 Dorrance Street, Suite 400**
**Providence, RI 02903**
**(401) 861-0200**
**sdz@zurierlaw.com**

## **CERTIFICATE OF SERVICE**

I hereby certify on this 13th day of November, 2015, I served a copy of this Memorandum on Defendants' counsel via the Court's CM/ECF system.

        /s/     Samuel D. Zurier, Esq.

51